*Tevin Hines v. State of Maryland*, No. 4, September Term, 2016. Opinion by Greene, J.

**CRIMINAL LAW—JOINDER OR SEVERANCE OF COUNTS OR CODEFENDANTS**

The trial judge abused his discretion in denying a trial severance where he knew before trial that a statement would be offered into evidence, which was inadmissible against the defendant requesting severance, and there was the potential that the defendant would be significantly prejudiced by the admission of the statement. Prejudice occurs where a defendant is unfairly prejudiced by evidence that would not be admissible against him in a separate trial.

Allen's statement implicated Hines and was unduly prejudicial to Hines because of the joinder. The statements Allen made about "Mike" were played for the jury along with the detectives' statements of disbelief. This, coupled with the detectives' interest in "Mike", unequivocally indicated to the jury that the detectives knew that "Mike" was fictional and knew that the man Allen claimed to have spent his morning with was     Hines insofar that the jury heard separate testimony that Hines lives at the same address as where Allen claimed "Mike" lived. Further, the statement implicated Hines because Allen claimed to go to the store with "Mike" and the jury saw surveillance video of Hines with Allen at the convenience store. We cannot assume the jury necessarily followed the limiting instruction when all signs pointed to Hines as being "Mike". Because the evidence implicated Hines in a manner so obvious that there is a risk that the jury would have difficulty following the limiting instruction, the trial court erred in denying a severance. The damage resulting from the reception of non-mutually admissible evidence denied Hines a fair trial. Hines would not have encountered this unfair prejudice had his motion for severance been granted and the denial of the severance was not harmless. We hold, therefore, that Hines is entitled to a new trial.

IN THE COURT OF APPEALS

OF MARYLAND

No. 4

September Term, 2016

_____

STATE OF MARYLAND

v.

TEVIN HINES

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed:  November 10, 2016

This case involves a joint criminal trial of two codefendants. The Circuit Court for Baltimore City denied Respondent Tevin Hines' motion for a severance in the trial of State v. Dorrien Allen ("Allen") and Tevin Hines ("Hines"). Hines argues that this was error because he was prejudiced by the admission into evidence of a statement made by Allen, which was inadmissible against Hines. At issue in this case is a question that this Court has never squarely addressed: the application of the offense joinder analysis set forth in *McKnight v. State*, 280 Md. 604, 612, 375 A.2d 551, 556 (1977) in the context of defendant joinder. We agree with Petitioner, the State of Maryland, that generally, where most of the evidence admissible at trial is mutually admissible, a joinder of defendants will be proper. However, where joinder will result in prejudice to one or more defendants, a trial judge has discretion under Maryland Rule 4-253 to grant a severance or order other relief as justice requires. Here, where non-mutually admissible evidence was actually admitted during a joint jury trial of codefendants and from the admission of that evidence, the objecting defendant was prejudiced, the trial judge abused his discretion in denying a severance. Because the statement that is inadmissible against Hines implicated him and therefore caused him to suffer unfair prejudice from the joinder, the trial court committed reversible error in denying the motion for severance and a new trial is warranted.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 15, 2013, Brandon Gadsby and Michelle Adrian drove from Frederick County to Baltimore City to purchase heroin. Gadsby drove down Edmondson Avenue and the surrounding residential streets of West Baltimore until two young men, one in an orange jacket and another in a black beanie, waived Gadsby down. Gadsby later identified

the men as Dorrien Allen and Tevin Hines. Gadsby testified that he pulled his truck over to the side of the street and Hines and Allen approached the vehicle and asked Gadsby, "Boy or Girl" meaning heroin or cocaine. Gadsby indicated that he wished to purchase heroin. According to Gadsby, Hines told Allen that he would meet him "over" there. Allen then got into Gadsby's vehicle and directed Gadsby to the 3900 block of Mulberry Street. When Gadsby parked his vehicle in a lot adjacent to a cemetery, Allen exited the vehicle and disappeared from view into a nearby alley. Allen then returned with Hines, but Hines remained in the alley while Allen walked over to Gadsby's vehicle. Gadsby testified to hearing Hines tell Allen, "not yet, not yet", apparently referring to the fact that a garbage worker was nearby. After the garbage worker was out of sight, Allen pulled out a handgun and said, "don't fuckin' move." Gadsby testified that he reached for his keys to start his truck and that Allen said, "are you trying to die?", and then fired a gunshot that shattered the driver's side window. Gadsby said he then held out the $120 he intended to use to purchase heroin and told Allen to take whatever he wanted. Allen grabbed the money, exited the vehicle, and fired his gun multiple times, wounding Gadsby and killing Adrian. Gadsby testified that Allen fled through a hole in the cemetery fence.

On the same day as the shooting, Officer Kevin McLean of the Baltimore City Police Department was patrolling the area and saw Allen and Hines at the Normandy Food Market at approximately 9:30 a.m. Allen was wearing a bright orange jacket and Hines was dressed in black. Officer McLean was familiar with Allen and Hines based on his experience patrolling that area. About twenty minutes later, Officer McLean drove to a nearby convenience store and saw Allen and Hines. At 10:47 a.m., Officer McLean

received a radio call reporting a shooting one block from Normandy Market and two blocks from the convenience store. Officer McLean responded to the scene whereupon Gadsby told Officer McLean he was shot by a black male wearing an orange jacket and blue jeans. Based on this information and on the fact that Officer McLean had seen Allen in the area earlier, he radioed that Dorrien Allen was a possible suspect.

Later on the same day, police saw Allen on the street and detained him for questioning. Allen was questioned by Detectives Fuller and Carew. This interview was recorded and offered as evidence by the State at trial. In the statement, Allen told police that on the day of the shooting, he remained home until around midday when he went to record a music video at his friend "Mike's" house. According to Allen's statement to the police, he did not know "Mike's" real name. Allen told police that "Mike" lives on the 300 block of Lyndhurst Avenue. The detectives then showed Allen a surveillance video of Allen at the convenience store during the time at which he claimed to have been home. The video, which was also shown to the jury at trial, shows Allen with a man who is clearly Hines. Allen admitted to detectives that he was in the video but claimed to not know who Hines was. Throughout the recorded interview, the detectives made statements of disbelief as to Allen's version of the events that took place on that day.[1] Evidence was also admitted at trial that established Hines' address was 301 Lyndhurst Avenue.

**Motion to Sever**

Hines made a pretrial motion for severance, arguing that introduction of Allen's

---

[1] At several points in the statement admitted into evidence, detectives told Allen they knew he was lying and urged him to come clean.

recorded statement would prejudice Hines. At the pretrial motions hearing, counsel for

Hines articulated to the trial judge the exact prejudice that would—and did—ensue from

the admission of Allen's statement at a joint trial:

> MR. SMITH [Defense Counsel]: Your Honor, I think that Mr. Hines' case should be severed partially because of the statement . . . the main part of the statement is, all of the commentary by the detectives about what they know, accusing Mr. Allen of you're lying, we know you're lying, we know about this other person that you're with, you're lying about the name of the other person that you're with, Mr. Allen saying his name is Mike. All of the commentary that we go through in this lengthy statement, and Mr. Allen's responses, however you want to characterize them, I don't think are at all admissible against Mr. Hines.

> * * *

> The other issue is I don't anticipate any ability to cross-examine Mr. Allen about any of his answers much less the ones regarding the accusations made by the detectives, we know you're lying Mr. Allen, we know that you're not telling us about the other person, we know who that other person is, that implication there, and we know you're lying about it, and it's not Mike and we know who it is. **Well, the only inference that can be drawn at that point is that it's Mr. Hines and that Mr. Allen is lying about it--**

> * * *

> THE COURT: Do they, at that point when they interview Mr. --

> MR. NASH [Prosecutor]: They know it's Tevin Hines, Your Honor.

> THE COURT: --Allen, they know who Hines is?

> MR. SMITH: Yes.

> MR. NASH: Yes.

> MR. SMITH: They're trying to get him to say it's Tevin Hines, isn't it, and he's saying no, it's Mike, I don't know, I don't wear an orange jacket.

> THE COURT: I am amazed they didn't say but we know that [sic] Tevin Hines. I'm surprised, I was really interpreting it the other way.

> MR. SMITH: No, they knew who they -- they had seen the video from

whatever, the first store, you heard them talk about the 9:25 or whatever time it was where they were asking Mr. Allen, we know you couldn't have gotten up at noon because we saw you at the store at 9:25 and we saw you with the other guy and we know who that other guy is, and they know who it was, and they were trying to get him to say it's Tevin Hines, and they're trying to get him to say all that and that's why in this situation, **Your Honor, I understand it's not -- they didn't use the word Tevin Hines, but the testimony of Mr. Gadsby in this case that will come out, is that there were only two people involved at the drug deal. This wasn't something you can sanitize and say well, maybe they won't, maybe they will just think that there was nobody else, okay, maybe you can sanitize this statement,** I don't think you really can with it making any sense whatsoever for the remaining parties, or the whole implication in this commentary by the detectives which is the problem with not just asking questions, making all of this commentary of we know you're lying we know more than this, we know these answers to these questions. All of that when I don't get to ask Mr. Allen any questions, I don't get to really cross-examine, you know, fully this statement and then have to say well, ladies and gentlemen, that has -- the Court has to then say well, ladies and gentlemen, only use those accusations of lying against Mr. Allen and only use these little bits of answers against Mr. Allen, and don't consider that as to Mr. Hines. **I think Your Honor is [sic] very dangerous and doesn't give Mr. Hines the ability to have full and fair cross examination, confrontation, and a full and fair trial.**

**And I think the way to cure that, obviously, is to sever his case because then we wouldn't play Mr. Allen's statement at all, it wouldn't be relevant, and it certainly wouldn't be admissible against Mr. Hines in a separate trial[.]**

* * *

THE COURT: Nothing in the statements the police made to Mr. Allen suggests that there's a second person involved in the crime, do they?

MR. SMITH: Yes, they do. They don't come out and say we know that there was a lookout, but the point is, Judge, the jury is going to get to hear all of that in the trial and they're going to say okay, now, let's play Mr. Allen's statement and the inference is going to be obviously all of these accusations are going to be well, that was Mr. Allen doing whatever, lying, not being honest, whatever word you want to use, and trying to hide the fact that the police who they believe it is Mr. Hines, is the co-perpetrator of all of these events that happened in the back alley of 3900. And it's not simple -- the bigger, to me, **one of the biggest problem [sic] is it's not a question and answer scenario and there's all of these accusations against Mr. Allen**

- 5 -

**but they are essentially imputed in a way to [sic] it's got to be Hines, we know who it is, it's got to be the co-defendant. Because they're not going to hear that there were three people involved other places, or four people, maybe it could have been somebody else that Mr. Allen is talking about. It can only be Mr. Hines that is being talked about because that's who they were trying to get him to talk about at the time.** And I think it's just impossible to parse out anything from this statement that is mutually admissible, and I think the safer and more fair way to proceed is to allow the State to use whatever they choose to use and Mr. Scott and the State and the Court decide the appropriate redacted statement as to Mr. Allen in his trial.

But to have and allow and essentially force Mr. Hines to have to sit here, not be able to cross-examine Mr. Allen about it, is unfair.

(emphasis added). In response to defense counsel's motion for severance, the prosecutor

made the following argument at the motions hearing:

MR. NASH: Your Honor, so when we are talking about a severance, it's under Rule, I am sorry, 4-253(a), appealing to case law, Stevenson 43 MD App 120, joinder dictates -- is dictated when most of the evidence at trial is admissible. In this case, almost all the evidence, all the witnesses are going to be the same. So what we're talking about, it sounds like counsel brought up two issues, hearsay and 6th and the 14th amendment, confrontation issue. Hearsay is not a reason to sever. Now, what we commonly refer to as Bruton can be, but we have to have a Bruton issues [sic], in other words, we have to have a statement that expressly identifies the defendant as the -- or the co-defendant as engaging in criminal conduct and frankly, Your Honor, we don't have that here.

So let's start with the argument that while there's other evidence in the case and if they take some things said in the statement, then they can link it to other evidence in the case and figure out that at times. Well, if we look at Richardson v. Marsh, that's 21 US 200, in a statement where the co-defendant doesn't name the defendant, even though there might be evidence in the confession, that's linked to other evidence in the trial, that's what Richardson v. Marsh says, that that is not reason to sever due to confrontation.

The bigger problem with counsel's argument is, is that the defendant, Mr. Allen, never says anywhere in any part of the statement, anything that implicates Mr. Hines and that's exactly what Bruton is supposed to protect one from. Even if we were to go out on a limb and say that there's something that the detective said, which clearly isn't -- wouldn't be accurate either,

because they never mentioned Mr. Hines [sic] name, but even if it was something the detective said, well, the detective can take the stand and they can cross-examine the detective. But Mr. Allen never says anything even remotely linking Mr. Hines to the crime. **As a matter of fact, he's trying to save Mr. Hines and repeats over and over again, I don't know who you're talking about, what you're talking about, I don't know that guy.** The closest we get is that I got some change from him or he gave me some change, one or the other.

So, Your Honor, there is no reason to sever, there's no confrontation issue, but even if there were, the case law would -- there is some of the case law that says that if Your Honor finds something (inaudible) in the confession of Mr. Allen that Your Honor has decided, even though (inaudible) could -- should be kept out, we can simply redact that and we can move on with the case, with the co-defendants tried together.

(emphasis added).

There is no dispute that the statement would have been inadmissible hearsay in a trial had Hines been tried separately from Allen.[2] However, the parties were in disagreement as to whether the statement would prejudice Hines. The trial court ruled that part of Allen's statement was admissible and denied the motion, stating "All right. If those matters were taken out, I don't think that the statement can even inferentially be pointing a finger at Mr. Hicks [sic] and I would deny the motion for severance." The trial judge admitted the statement, subject to a limiting instruction to the jury that the statement was only evidence against Allen and was not to be considered against Hines.[3]

---

[2] As to Allen, the statement is admissible hearsay under the statement of a party opponent exception. Md. Rule 5-803. However, as to Hines, no hearsay exception applies.

[3] Specifically, the trial judge instructed:
Now, some of the evidence in this case is applicably [sic] only to one of the defendants and does not have any effect on the other person. Specifically I address your attention to the statement made by Mr. Allen. It was only admitted against him and not against Mr. Hines. You must consider such

**Statement Admitted in the State's Case in Chief**

The following portions of Allen's statement were admitted in the State's case in chief and played at trial for the jury:

DETECTIVE CAREW: Okay. All right. So you're saying that you did not leave your house until 12:00 noon?

MR. ALLEN: Yes.

DETECTIVE CAREW: Okay. Where did you go?

MR. ALLEN: I went to the studio.

DETECTIVE CAREW: You went right to the studio?

MR. ALLEN: Yeah, I had in my mind I was going there, so I was ready to hit.

DETECTIVE CAREW: You went right from 639 Yale Avenue [Dorrien Allen's residence] right to --

**MR. ALLEN: Lyndhurst.**

**DETECTIVE CAREW: To Lyndhurst. What address on Lyndhurst?**

**MR. ALLEN: I don't know the address on Lyndhurst, I know it's like the 300 block.**

**DETECTIVE CAREW: 300 block of Lyndhurst. And who lives there?**

**MR. ALLEN: I know Mike live there and like I know he probably got the rest of the family household, I don't really pay attention.**

\* \* \*

DETECTIVE CAREW: All right. So what time did you get to that house, the studio at the 300 block of Lyndhurst?

---

evidence only as it relates to Mr. Allen, as I told you during the trial, each defendant is entitled to has [sic] his case decided separately on evidence that applies to that person.

- 8 -

MR. ALLEN: I don't know the time I got to the house, probably, I don't know, it's probably, you know, cuz by the time I was -- I was probably getting to his house, I don't know what time it probably was, I don't know, it was probably going on 1:00 something, I don't know.

DETECTIVE CAREW: And who did you see at the house?

MR. ALLEN: What you mean who did I see at the house?

DETECTIVE CAREW: When you went to the studio, who did you talk to or--

MR. ALLEN: I was talking to Mike.

DETECTIVE CAREW: Mike.

**MR. ALLEN: Me and Mike was the only one[s] in there at the time, that's why me and him had left out and went to the store and that's how the officer had grabbed me, I was with Mike.**

DETECTIVE CAREW: Oh, when the officer grabbed you, you were with Mike?

MR. ALLEN: Yes.

DETECTIVE CAREW: What is Mike's real name?

MR. ALLEN: I don't know his real name.

DETECTIVE CAREW: All right. So that's all you did for the entire day. You left at noon, you went to Lyndhurst and then you came outside and the officers grabbed you?

MR. ALLEN: Yeah, we was going to the store and --

DETECTIVE CAREW: What store were you going to?

**MR. ALLEN: We was going to walk around to Normandy.**

* * *

DETECTIVE CAREW: Well, we have video that shows and the jacket and

- 9 -

your face and you will get to see that at some point, but trust me that that's the case, and we knew where to go back to get the video because the officer saw you up there earlier and went in the store and he told us to go look, and we went and looked and **there you were, but you weren't alone, you also had a friend with you. Who is the friend with you?**

**MR. ALLEN: The only person I was out there with was Mike, sir.**

**DETECTIVE CAREW: That's a lie. All right. In order for you to help yourself in any way, you got to find a way to tell the truth and you are not doing that.**

MR. ALLEN: I am, sir, you can't tell me I'm not telling the truth--

DETECTIVE CAREW: I can tell you the truth when I have video, when I have the officer and the officer I know is right because when we went back, we looked at the video and we downloaded the video and we have it on CD, of you and your friend, **and we know who your other friend is and we know where he lives. Can you just tell us where the friend lives that was with you?**

MR. ALLEN: I don't know where he lives.

**DETECTIVE CAREW: Try 301 Lyndhurst.**

* * *

(Whereupon, the taped statement was stopped in the courtroom [and Detective Fuller gave the following in-court testimony:])

[BY PROSECUTOR]:

**Q.      And at that part of the video, what are you guys looking at?**

**A.      [BY DETECTIVE FULLER] I'm indicating Mr. Hines on the video.**

**Q.      And before, just like 30 seconds earlier, we're talking about where Mr. Allen is being shown the video and he identifies somebody as himself, who is he identifying?**

**A.      Mr. Allen -- you can see his face clearly on the video but Mr. Allen in the video wearing the orange jacket.**

- 10 -

**Q. That's who he identifies as himself?**

**A. Correct.**

(emphasis added). The jury heard this, as well as in-court testimony by Detective Fuller that Hines lived at 301 Lyndhurst. At trial, neither Hines nor Allen testified. The jury convicted Hines of first degree murder, use of a handgun in commission of a crime of violence, attempted murder, robbery with a deadly weapon, conspiracy to commit robbery with a deadly weapon, and first-degree assault.

Hines noted an appeal to the Court of Special Appeals, arguing, *inter alia*, that the trial court erred in denying Hines' motion to sever the codefendants' trials. The Court of Special Appeals, in an unreported opinion, reversed the trial court's ruling, and held that "Hines was prejudiced by having to defend himself against . . . evidence that would not have been admissible had he been tried separately." The State of Maryland filed a Petition for a writ of certiorari in this Court. We granted *certiorari*, *State v. Hines*, 446 Md. 291, 132 A.3d 193 (2016), to answer two questions.[4] We have restated the first question for clarity:

> (1) Did the trial judge err in denying a severance in accordance with Rule 4-253(c)?

> (2) Was any error in admitting Allen's statement harmless?

---

[4] The State presented the following questions:

> (1) In a joint trial, was the trial court within its discretion in admitting a co-defendant's statement which did not mention Hines, but did mention the street where Hines lived?

> (2) Was any error in admitting Allen's statement harmless?

For the reasons that follow, we answer yes to question one and no to question two. Accordingly, we affirm the judgment of the Court of Special Appeals and hold that it was error for the trial judge to refuse to sever the trials and the error was not harmless.

**STANDARD OF REVIEW**

Maryland Rule 4-253(c) specifically affords the trial court discretion in deciding a severance motion. Md. Rule 4-253 ("If it appears that any party will be prejudiced by the joinder . . . the court *may*, on its own initiative or on motion of any party, order separate trials . . . or grant any other relief as justice requires.") (emphasis added). Ordinarily, such decisions are reviewed only for abuse of discretion. *See Erman v. State*, 49 Md. App. 605, 612, 434 A.2d 1030, 1036 (1981). In *McKnight*, 280 Md. at 612, 375 A.2d at 556, we limited the discretion afforded to a trial judge under Rule 4-253(c) and held that severance is mandated where a single defendant is jointly tried by a jury for separate offenses and evidence as to the offenses is non-mutually admissible. We explain, as discussed below, that the *McKnight* analysis applies in the limited context of joinder/severance of *offenses*. The proper standard of review when reviewing a severance determination in cases of codefendant joinder remains whether the trial court abused its discretion.

**DISCUSSION**

**Legal Contentions**

The State argues that the Court of Special Appeals adopted an approach to joinder wherein the only test is "whether the evidence as to all defendants is mutually admissible" and this approach "would have the effect of eliminating nearly all joint trials of co-defendants[.]" According to the State, the proper test is whether the introduction of non-

- 12 -

mutually admissible evidence is prejudicial.  The State posits, however, that the statement did not prejudice Hines because the type of prejudice to be avoided in the context of non-mutually admissible evidence in a joint trial of multiple defendants is "impairment to a particular defense," or "undue risk of conviction on grounds unrelated to the evidence." According to the State, even where prejudice exists, the court has discretion to curtail the prejudice by means other than severance, such as redactions and limiting instructions.  The State argues that the trial court did not abuse its discretion because the statement was redacted to remove any references to Hines.  In addition, the State contends that there was no prejudice because the judge gave a limiting instruction, and the content of the statement did not interfere with Hines' defense of mistaken identity.  The State maintains that the statement was introduced to show Allen's consciousness of guilt because he gave a demonstrably false alibi.[5]

Hines views the case differently.  He maintains that in cases involving joint

---

[5] The State also contends that the admission of the statement did not implicate *Bruton*. *Bruton* deals specifically with the Sixth Amendment Confrontation Clause rights implicated where two or more defendants are jointly tried and one of the defendants does not testify at trial but gives a statement to police that is later admitted into evidence at trial. *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).  The State's position is that *Bruton* is not implicated because nothing in the statement directly inculpated Hines and to the extent there was any "linkage" evidence tying Hines to the statement, it was more attenuated than the linkage evidence in *Richardson v. Marsh*, 481 U.S. 200, 202, 107 S. Ct. 1702, 1704, 95 L. Ed. 2d 176, 182 (1987).  To this point, Hines contends that this case is unlike *Richardson*, where the court removed any reference to the existence of another assailant, and is instead more analogous to *Gray v. Maryland*, 523 U.S. 185, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), where an "obvious deletion" was not enough to protect the defendant's Sixth Amendment rights.  We did not grant *certiorari* to decide whether *Bruton* is implicated.  We need not reach that issue as the matter is dispositive under Rule 4-253.

defendants, the applicable rule is set forth in *McKnight*, 280 Md. at 612, 375 A.2d at 556, that where evidence is non-mutually admissible, severance is required as a matter of law. According to Hines, the trial judge erred as a matter of law in admitting Allen's redacted statement, which is inadmissible hearsay as to Hines. He asserts that he was prejudiced by the introduction of the statement and that the limiting instruction was insufficient to insulate him from prejudice. Hines contends that he suffered prejudice not because he was directly mentioned in the statement, but because the detectives exposed Allen's obvious lies and conveyed to the jury that the police knew: (1) that "Mike", who lived on the 300 block of Lyndhurst, was a fictitious person; (2) that Hines was Allen's companion shown in the video surveillance footage; and (3) that Hines lived at 301 Lyndhurst. Moreover, Detective Fuller testified during breaks in the playing of the recording that police knew Hines was the one in the video. Thus, Hines contends that "the unmistakable message" from the questioning and comments by the detective and from Allen's untruthful answers was that Allen was with Hines at the time of the shooting and Allen lied about it, possibly to insulate Hines.

## Maryland Rule 4-253

Joinder and severance in criminal cases is governed by Maryland Rule 4-253. This Rule contemplates two distinct joinder/severance situations: defendant joinder and offense joinder. Under Rule 4-253(a), two or more defendants can be tried together in a joint trial "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Md. Rule 4-253. Under subsection (b), upon motion of a party, a trial court may join separate but related offenses

- 14 -

in a trial of a single defendant where the defendant "has been charged in two or more charging documents." *Id.* This Rule is based on a policy favoring judicial economy and its purpose is "to save the time and expense of separate trials under the circumstances named in the Rule, if the trial court, in the exercise of its sound discretion deems a joint trial meet[6] and proper." *Lewis v. State*, 235 Md. 588, 590, 202 A.2d 370, 371 (1964). Finally, subsection (c), with which we are here concerned, governs "prejudicial joinder." This subsection provides:

> If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

*Id.* This final subsection affords a trial judge discretion in making a joinder/severance determination and embodies a balancing approach between "the likely prejudice caused by the joinder . . . [and] the considerations of economy and efficiency in judicial administration." *Frazier v. State*, 318 Md. 597, 608, 569 A.2d 684, 689 (1990).

We recognize that the "overbearing concern of the law of this State with respect to joint or separate trials of a defendant charged with criminal offenses [is] to safeguard against potential prejudice." *Frazier*, 318 Md. at 607, 569 A.2d at 689. Under the Rule, a trial judge has discretion in deciding how to safeguard against prejudice caused by joinder; the judge may grant a severance or "other relief as justice requires." Md. Rule 4-253.

---

[6] According to Webster's II New College Dictionary, one definition of the word meet is "fitting: proper <It is *meet* that we give thanks.>" WEBSTER'S II NEW COLLEGE DICTIONARY (3d Ed. 2005).

- 15 -

Maryland Courts have repeatedly held that "'[p]rejudice' within the meaning of Rule 4-253 is a 'term of art,' and refers only to prejudice *resulting* to the defendant *from* the reception of evidence that would have been inadmissible against that defendant had there been no joinder." *Galloway v. State,* 371 Md. 379, 394 n. 11, 809 A.2d 653, 663 n. 11 (2002) (quoting *Ogonowski v. State*, 87 Md. App. 173, 186–87, 589 A.2d 513, 520 (1991)) (emphasis added).

Thus in exercising discretion to avoid prejudice to a defendant, the trial judge must engage in the following analysis. First, the judge must determine whether evidence that is non-mutually admissible as to multiple offenses or defendants will be introduced. Second, the trial judge must determine whether the admission of such evidence will cause unfair prejudice to the defendant who is requesting a severance. Finally, the judge must use his or her discretion to determine how to respond to any unfair prejudice caused by the admission of non-mutually admissible evidence. The Rule permits the judge to do so by severing the offenses or the co-defendants, or by granting other relief, such as, for example, giving a limiting instruction or redacting evidence to remove any reference to the defendant against whom it is inadmissible. The judge must exercise his or her discretion to avoid unfair prejudice. *See Day v. State*, 196 Md. 384, 394, 76 A.2d 729, 733 (1950) "(While it is generally a matter of discretion with the court as to whether a separate trial shall be granted, such discretion is not to be exercised arbitrarily but so as to prevent injustice.")  (quoting *People v. Patris*, 196 N.E. 806, 808 (Ill. 1935)). Where, as discussed below, a limiting instruction, redaction, or other relief is inadequate to cure the unfair prejudice, and severance remains the only option to avoid unfair prejudice, a denial of severance

constitutes an abuse of discretion.

## *McKnight*

In *McKnight*, this Court limited a trial judge's discretion to join offenses in the context of a jury trial under Rule 745, the predecessor to Rule 4-253. 280 Md. at 612, 375 A.2d at 556. The *McKnight* Court held that in a jury trial, "a defendant charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible[7] at separate trials." *Id*. The Court based its holding on the rationale underlying the "other crimes" evidentiary rule of exclusion. *McKnight*, 280 Md. at 611, 375 A.2d at 555. The Court, in considering the criticisms of offense joinder, was particularly concerned with the possibility that "the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer a criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged." *McKnight*, 280 Md. at 609, 375 A.2d at 554–55. We explained that the "other crimes" evidentiary rule is designed "to prevent prejudice to defendants" and that if the rationale behind that rule is valid, "prejudice will result from joinder

---

[7] The term mutual admissibility appears throughout the case law. Where evidence is "mutually" admissible, it is admissible in a joint trial, as well as in separate trials. Where evidence is non-mutually admissible, it is admissible at a joint trial of offenses or defendants as to a specific offense or a specific codefendant, but *would* be inadmissible at a *separate* trial of the other offense or other defendant. *See, e.g.*, *McKnight*, 280 Md. at 610, 375 A.2d at 555 ("Where evidence of one crime *would be admissible at a separate trial on another charge*, a defendant will not suffer any additional prejudice if the two charges are tried together. It is equally clear, however, that where offenses are joined for trial because they are of similar character, but the evidence *would not be mutually admissible*, the prejudicial effect is apt to outweigh the probative value[.]") (emphasis added).

wherever the ["other crimes"] rule itself is violated, even though the evidence is separable."
*McKnight*, 280 Md. at 611, 375 A.2d at 555.

Consistent with the decisions pre-dating it, *McKnight* was decided on an abuse of discretion standard.  280 Md. at 614, 375 A.2d at 557.  H owever, *McKnight* has been subsequently interpreted to stand for the proposition that non-mutual admissibility of evidence as to unrelated offenses is *per se* prejudicial in the context of a jury trial, requiring severance as a matter of law.  In *Graves v. State*, this Court explained:

> The *McKnight* holding *took away the discretion of the trial judge* presiding at a jury trial to join similar offenses where the evidence as to them was not mutually admissible.  As we have indicated, in such circumstances, there was *prejudice as a matter of law which compelled separate trials*.  The rationale underlying the *McKnight* holding was our concern that a jury would be unable to set aside the likely prejudice engendered by the joinder.

298 Md. 542, 545–46, 471 A.2d 701, 702–03 (1984) (emphasis added).  *See also Wieland v. State*, 101 Md. App. 1, 10, 643 A.2d 446, 450 (1994) ("[*McKnight* is] the case that first *dramatically narrowed the range of discretion* truly available to the trial judge by holding that, in a jury case at least, whenever evidence on separate charges would be mutually not admissible, severance, if timely requested, *is absolutely mandated as a matter of law*.") (emphasis added).  In *Wieland*, Judge Charles E. Moylan, Jr., writing for the Court of Special Appeals, referred to *Graves* as the "definitive exegesis of the meaning of *McKnight*" as totally limiting the judge's discretion.  *Id*.  Judge Moylan explained further that "[t]he nagging incongruity is that we continue to label the reason for appellate reversal on this issue not 'legal error,' which it has become, but an 'abuse of discretion,' which it cannot be for there is no longer any discretion to be abused."  *Wieland*, 101 Md. App. at

11, 643 A.2d at 451. As we discuss in this opinion, our holding in *McKnight* must be understood in terms of the context of that case, a joinder of offenses in a jury trial of a single defendant.

**Confusion in the Case Law: *McKnight* in the Context of Defendant Joinder**

Although *McKnight* set forth a clear standard in cases of *offense* joinder within the context of a jury trial, confusion as to this standard's applicability to *defendant* joinder has persisted in the case law. Cases decided since *McKnight*, dealing with offense joinder have stated, in *dicta*, that the standard elucidated in *McKnight* applies to both offense joinder and defendant joinder. *See, e.g., Solomon v. State*, 101 Md. App. 331, 340, 646 A.2d 1064, 1068 (1994) ("The first ground-breaking step taken by the *McKnight* decision was to hold that, in a jury trial at least, severance was absolutely mandated, as a matter of law, when the evidence with respect to the separate charges (or, presumably, with respect to separate defendants) would not be mutually admissible. In a jury trial, on this issue no discretion remains."). *See also Conyers v. State*, 345 Md. 525, 552, 693 A.2d 781, 794 (1997) ("*McKnight*'s holding, technically, did not apply to multiple defendant joinder, but this Court has stated that the *McKnight* analysis is also the proper way to determine the propriety of multiple defendant joinder."). Additionally, this Court has cited *McKnight* in the context of codefendant joinder cases. *See Osburn v. State*, 301 Md. 250, 254, 482 A.2d 905, 907 (1984).

In *Osburn*, we wrote that *McKnight* set the standard for "the joinder/severance of multiple defendants or multiple charges against one defendant; the evidence offered must be mutually admissible as to each defendant or as to each charge in order for joinder to be

- 19 -

proper." *Id*. *See also Ogonowski*, 87 Md. App. at 186–87, 589 A.2d at 519–20 (stating that "[t]he analysis applicable to joinder and severance of defendants" is "essentially identical" to that for offense joinder and upholding denial of severance where the claims of error did "not involve evidence that would have been inadmissible in a severed trial"). Other cases have classified *McKnight* as applicable only in the limited context of offense joinder. *Graves*, 298 Md. at 545, 471 A.2d at 702 ("The *McKnight* holding took away the discretion of the trial judge presiding at a jury trial *to join similar offenses* where the evidence as to them was not mutually admissible.") (emphasis added).

The post-*McKnight* case law has thus created some confusion as to whether a finding of non-mutual admissibility of evidence in a joint defendant trial automatically entitles a defendant to a severance without any further inquiry into prejudice. Upon this distinction, the State and Hines are in dispute. What is clear from *McKnight* is that the question of mutual admissibility is at least common to determinations of prejudice in both contexts of offense joinder and defendant joinder. The question of mutual admissibility is simply a method of assessing what difference there would be between a joint and a separate trial in any given case. *See McKnight*, 280 Md. at 610, 375 A.2d at 555 ("Where evidence of one crime would be admissible at a separate trial on another charge, a defendant will not suffer any additional prejudice if the two charges are tried together."); *Solomon*, 101 Md. App. at 349, 646 A.2d at 1073 ("[P]rejudice at a joint trial does not consist of damage from evidence that would have been admissible in any event even had the trials of the defendants or charges been severed."). The *McKnight* analysis ends upon a finding, *vel non*, of mutual admissibility. However, this Court has never had the opportunity to squarely determine

whether the analysis in the context of *defendant* joinder stops where the *McKnight* analysis ends or if it goes beyond *McKnight*. *See Osburn*, 301 Md. at 254–55, 482 A.2d at 907 (ending the analysis upon a finding of mutual admissibility).

In both *Osburn* and *Ogonowski*, the evidence involved was mutually admissible, meaning that it would have been admissible against the defendant requesting severance had he been given a separate trial. *Osburn*, 301 Md. at 254, 482 A.2d at 907; *Ogonowski*, 87 Md. App. at 187, 589 A.2d at 520. The mutually admissibility in these cases was dispositive of the outcome and the appellate courts did not need to, nor did they have the opportunity to, determine whether prejudice under the Rule existed. In short, these cases did not have the facts that we have before us today. Thus, the courts did not have an opportunity to apply the full analysis inherent in Rule 4-253(c). Further, both *Conyers* and *Solomon* involved questions of severance in the *offense* joinder context; language suggesting a *McKnight* analysis in the context of codefendant joinder was *dicta*. *Solomon*, 101 Md. App. at 340, 646 A.2d at 1068; *Conyers*, 345 Md. at 552, 693 A.2d at 794.

A close examination of our case law reveals that non-mutual admissibility alone does not entitle a defendant to a separate trial from his codefendant. Instead, "prejudice" under Rule 4-253(c) by definition means damage *from* evidence that would not have been admissible against a defendant in a trial separate from his codefendant. *See, e.g., Moore v. State*, 84 Md. App. 165, 169, 578 A.2d 304, 306 (1990) ("A defendant is deemed to have been prejudiced by a joint trial when the joining of a co-defendant or co-defendants (1) permits the State to introduce, against a particular defendant, otherwise inadmissible evidence, and (2) that otherwise inadmissible evidence tends to contradict the defendant's

- 21 -

theory of the case."). Technically, the *McKnight* analysis for offense joinder is no different than the analysis for codefendant joinder. In both contexts, when confronted with a severance question, a trial court must first determine whether there is non-mutually admissible evidence, and then must ask whether the admission of non-mutually admissible evidence results in any unfair prejudice to the defendant. What *McKnight* did in the limited context of offense joinder in a jury trial was to create a presumption of prejudice upon the reception of non-mutually admissible evidence. In the particular context of offense joinder, non-mutually admissible evidence is *inherently* prejudicial because evidence pertains to only one defendant and is accompanied by the risk of improper propensity reasoning on the part of the jury. [8] *See McKnight*, 280 Md. at 609, 375 A.2d at 554–55 ("[T]he jury may use the evidence of one of the crimes charged, or a connected group of them, to infer a criminal disposition on the part of the defendant from which he may also be found guilty

---

[8] The distinction between situations in which non-mutually admissible evidence pertains to a single defendant versus pertaining to multiple defendants is important for two reasons. First, it makes proper the finding of prejudice as a matter of law in the context of offense joinder for the reason explained above—the evidence only pertains to the one defendant, thus it is clearly prejudicial as to him or her because it embodies the risk of improper propensity reasoning. Second, this distinction explains how the *McKnight* line of cases limited a judge's discretion under the Rule regarding how the judge cures unfair prejudice caused by a joinder. Ordinarily, a judge has discretion under Rule 4-253 to respond to prejudicial joinder by granting a severance or "other relief as justice requires." The "other relief" could be, for example, redacting a statement or limiting hearsay testimony to remove any reference to the defendant against whom it is inadmissible. However, in the context of offense joinder, all of the evidence is admissible against *the one* defendant, so redaction is not a viable option. Further, this Court held in *McKnight* that a limiting instruction would be insufficient means of curing prejudice caused by the admission of non-mutually admissible evidence in the context of a jury trial of joined offenses. Thus, there is no relief other than a severance that could conceivably cure the prejudice caused by a joinder of offenses where the evidence is non-mutually admissible.

of other crimes charged."). Thus, a trial judge, in the context of a jury trial, need not make an additional inquiry into the existence of prejudice because prejudice is *inherent* in the non-mutual admissibility of evidence.[9]

In cases of codefendant joinder, however, it is foreseeable that in some instances, evidence that is non-mutually admissible may not unfairly prejudice the defendant against whom it is inadmissible because the evidence does not implicate or even pertain to that defendant. Due to this latter scenario, it is inappropriate to say that, as we have said in the context of offense joinder, non-mutuality equates with prejudice in the context of codefendant joinder. Instead, the defendant must show that non-mutually admissible evidence will be introduced *and* that the admission of such evidence will result in unfair prejudice. *Ball v. State* is illustrative. 57 Md. App. 338, 354, 470 A.2d 361, 370 (1984), *aff'd in part, rev'd in part sub nom. Wright v. State*, 307 Md. 552, 515 A.2d 1157 (1986).

In *Ball*, codefendants Ball, Wright, and Gilmore were jointly tried and convicted of a killing that occurred during the commission of a robbery at an A&P store. *Ball*, 57 Md. App. at 347–49, 470 A.2d at 366–67. On appeal, Wright challenged the trial court's denial of his motion for severance. *Ball*, 57 Md. App. at 347, 470 A.2d at 366. At trial, the State called Angelo Frazier as a witness. *Ball*, 57 Md. App. at 350, 470 A.2d at 367. Frazier was incarcerated at the same time along with Wright's codefendants, Ball and Gilmore. *Id*. Frazier testified that while in lockup, he overheard a conversation between Ball and

---

[9] "The law of trial joinder in bench trials is more flexible. A judge has discretion to permit joinder of offenses or defendants even if there is no mutual admissibility of offenses because it may be presumed that a judge will not transfer evidence of guilty as to one offense to another offense." *Conyers*, 345 Md. at 552–53, 693 A.2d at 794.

Gilmore. *Id*. Frazier specifically testified that he heard Gilmore say to Ball, "This is probably the A&P lineup. I can't worry because they can't identify any of us, we had masks on" and that Ball replied, "I know, I ain't worried about it." *Id.* This evidence, although hearsay, was admissible against Gilmore under the statement of a party opponent hearsay exception, and admissible against Ball pursuant to the adoptive admission hearsay exception. *Ball*, 57 Md. App. at 354, 470 A.2d at 369.[10] *See also* Md. Rule 5-803. As to Wright, the statement was hearsay and would have been inadmissible had Wright been tried separately. *Id*.

Nevertheless, the Court of Special Appeals affirmed the denial of severance, noting that "the conversation did not *implicate* the appellant Wright and *did him no damage in any direct sense*." *Id.* (emphasis added). This is perhaps the clearest indication that non-mutuality *alone* does not lead to a finding of prejudice *as a matter of law* in the context of defendant joinder. Had the standard set forth in *McKnight* applied, Wright would have been entitled to severance because the evidence was inadmissible as to Wright and, under *McKnight*, severance is mandated as a matter of law where evidence is non-mutually admissible. *Graves*, 298 Md. at 545–46, 471 A.2d at 702.[11]

---

[10] As such, Ball, who also challenged a denial of his own severance motion, was not entitled to severance. *Id*

[11] Those cases that, in *dicta*, cited *McKnight* as the standard applicable to both defendant joinder and offense joinder were not necessarily incorrect; rather, those courts simply did not have occasion to determine whether non-mutually admissible evidence as to codefendants was *per se* prejudicial because each of those cases dealt with evidence that *was* mutually admissible. *See Osburn*, 301 Md. at 254, 482 A.2d at 907; *Ogonowski*, 87 Md. App. at 187, 589 A.2d at 520.

*Payne v. State* involved a joint trial of codefendants Payne and Bond who were charged with felony murder and kidnapping. 440 Md. 680, 682, 104 A.3d 142, 143 (2014). At their joint trial, wiretapped phone conversations, in which Bond was a participant but Payne was not, were admitted into evidence. *Payne*, 440 Md. at 682–83, 104 A.3d at 143. The telephone conversations were inadmissible against Payne under the rule against hearsay. *Payne*, 440 Md. at 710, 104 A.3d at 159. We also determined that the conversations would not implicate *Bruton*, because under *Crawford v. Washington*, the statements were non-testimonial.[12] *Payne*, 440 Md. at 717–18, 104 A.3d at 164. However, we remanded the case to the trial court for a determination of "whether joinder or a cautionary instruction will sufficiently avoid prejudice to Payne under the tenets of Maryland Rule 4-253(c)." *Payne*, 440 Md. at 718, 104 A.3d at 164 ("[P]rejudice within the meaning of Rule 4-253 is a 'term of art' and refers only to prejudice resulting to the defendant from the reception of evidence that would have been inadmissible against the defendant had there been no joinder.") (quoting *Galloway*, 371 Md. at 394 n. 11, 809 A.2d at 663 n. 11). Thus, *Payne* is likewise illustrative of the distinction between the analysis for severance of offenses and of defendants. Had the application of the rule been the same in the joinder of defendants context, inadmissibility alone would equate with prejudice under the Rule, and there would have been no reason for this Court to remand the case to the trial court to determine whether there was prejudice under Rule 4-253.

---

[12] "[I]t is 'necessary to view *Bruton* through the lens of *Crawford*[.]'" *Payne*, 440 Md. at 717, 104 A.3d at 164 (quoting *United States v. Figueroa–Cartagena,* 612 F.3d 69, 85 (1st Cir. 2010)).

Accordingly, we clarify that the application of the analysis for joinder and severance of defendants differs from the analysis applicable to joinder and severance of offenses in the context of a jury trial.[13]  *McKnight* limited a trial judge's discretion in the narrow context of a jury trial in which a single criminal defendant is charged with similar but unrelated *offenses* and requires severance where evidence that is non-mutually admissible as to one or more offenses is introduced.  Although mutual admissibility is a necessary determination in both contexts, non-mutual admissibility alone does not equate to prejudice as a matter of law in the context of joinder and severance of codefendants.  Rather, in this context, a trial judge retains the discretion afforded to him or her by Rule 4-253 to sever the case or grant such other relief as justice requires.  In other words, the *test* for severance in the context of offense joinder and in the context of codefendant joinder is the same: the joinder cannot be unduly prejudicial.  What differs between these two situations is the *application* of the test—how a trial court determines the existence of prejudice.

*McKnight* created a presumption in the limited context of a jury trial of a single defendant for joined offenses: because admission of non-mutually admissible evidence

---

[13] We find support for this distinction in several Court of Special Appeals decisions.  As the intermediate appellate court noted in *Eiland v. State*:

> [The] possibility of **significant damage** to a defendant **by evidence inadmissible** as to him but admissible against a codefendant is the only criterion for measuring joinder/severance ever recognized by Maryland law.  Unless **damaging** evidence is not mutually admissible, a trial severance is, indeed, contraindicated.  As we stated in *Ball v. State,* 57 Md.[ ]App. 338, 353, 470 A.2d 361 (1984) (emphasis supplied), "A severance is called for *only* when a defendant will be significantly prejudiced by evidence admissible against a codefendant but not admissible against him."

92 Md. App. 56, 73–74, 607 A.2d 42, 51 (1992) (emphasis added).

against *one* defendant is inherently prejudicial against *that* defendant, trial courts need not make further inquiry into prejudice. In the context of defendant joinder, the trial court must first determine whether non-mutually admissible evidence will be introduced and then must determine whether the admission of such evidence will unfairly prejudice the defendant seeking a severance. If the trial judge finds that the admission of non-mutually admissible evidence will result in unfair prejudice, the judge must exercise his or her discretion to remove the prejudice by either granting a severance or other relief (such as redacting evidence so as to implicate only the defendant against whom the evidence is admissible). As discussed below, the trial judge in this case abused his discretion by failing to adequately remove the unfair prejudice to Hines caused by the admission of Allen's statement.

### Prejudice in the Context of Joinder of Codefendants

An examination of the appropriate body of case law dealing squarely with the issue of prejudice in the context of codefendant joinder reveals two cases where a Maryland appellate court has held that a trial judge abused his discretion in denying a trial severance. This examination begins with the case of *Day*, 196 Md. 384, 76 A.2d 729. Although *Day* has been classified as a "*pre*-Bruton case with a Bruton problem[,]" this case is nonetheless relevant to our Rule 4-253 analysis. *Eiland*, 92 Md. App. at 74 n.3, 607 A.2d at 51 n.3. *See also Sye v. State*, 55 Md. App. 356, 364, 468 A.2d 641, 645 (1983). *Day* is particularly useful to our analysis because it was decided not on Confrontation Clause grounds, but upon the basis of prejudice resulting from a jury's inability to ignore non-mutually admissible evidence, even after this Court gave limiting instructions. *Day*, 196 Md. at 390,

76 A.2d at 731. *See also Sye*, 55 Md. App. at 366, 468 A.2d at 646 ("*Day* . . . involved prejudice arising from the impact of inadmissible evidence, thereby denying a defendant a fair trial.").

*Day* involved a joint trial of two codefendants, both of whom gave statements to police wherein each defendant blamed the other defendant for a shooting. *Day*, 196 Md. at 387, 76 A.2d at 730. At the time that the defendants filed motions for severance, the trial judge was aware that the State was going to introduce the statements at trial. *Id.* The trial court denied severance and admitted the statements into evidence. *Id.* The trial court instructed the jury that each defendant's statement was only evidence against that defendant and was not to be considered against his codefendant. *Day*, 196 Md. at 387–88, 76 A.2d at 730. The defendants appealed, arguing that the limiting instruction offered them insufficient protection and that the trial court erred in denying the severance. *Day*, 196 Md. at 388, 76 A.2d at 730.

In reviewing the denial of severance, this Court initially noted that severance determinations are within the sound discretion of the trial court. *Day*, 196 Md. at 388, 76 A.2d at 730. We explained that "[t]here are a number of matters which are in the discretion of the trial court, but it is not true that in all of these matters there is no review." *Day*, 196 Md. at 388–89, 76 A.2d at 731. We further recognized that "[w]hile it is generally a matter of discretion with the court as to whether a separate trial shall be granted, such discretion is not to be exercised arbitrarily but so as to prevent injustice." *Day*, 196 Md. at 394, 76 A.2d at 733 (quoting *People v. Patris*, 196 N.E. 806, 808 (Ill. 1935)). Prior to *Day*, this Court had held that giving a limiting instruction is "all that the court can do in a joint trial,"

but had "not passed upon the question of whether the court could not or should not do more by way of granting a severance, if it is known to the court at the time the severance is asked that that situation is going to arise." *Day*, 196 Md. at 390, 76 A.2d at 731–32. In holding that the trial court abused its discretion in denying the severance, this Court wrote:

> Under ordinary circumstances, where two parties are accused of the same crime, it is in the interest of both justice and economy that they should be tried together, but under the circumstances of this case, we have come to the conclusion that it was an abuse of discretion by the trial court, *after it knew what evidence was to be produced*, not to grant the severance prayed, and we will therefore reverse the case as to each defendant on this ground so that a new and separate trial may be had as to each.

*Day*, 196 Md. at 395, 76 A.2d at 734. This Court based its holding on the conclusion that a limiting instruction in the case before it was insufficient to insulate the codefendants from prejudice, noting that

> [a] joint trial under the circumstances in this case would necessarily raise in the minds of the jury the question which of the defendants was telling the truth, or whether both were lying. Under such circumstances it would be a practical impossibility for the jurors to dismiss from their minds the statements of Lewis against Day when considering the Day case, and to dismiss the statements of Day against Lewis when considering Lewis's case. No juror, no matter how intelligent and how desirous of doing his duty, and obeying the instructions of the court, could rid his mind of the impression necessarily made upon him, by these statements of each of the defendants against the other.

*Day*, 196 Md. at 390, 76 A.2d at 731. In sum, the trial judge in *Day* abused his discretion in electing to give a limiting instruction in lieu of granting a severance where he was aware before the trial that non-mutually admissible evidence would be introduced at trial and that the admission of such evidence would prejudice the defendants.

Another case where the trial judge abused his discretion in denying severance is

*Erman*, 49 Md. App. at 613, 434 A.2d at 1036. This case involved a motion for mistrial on severance grounds, which the defendant made during the course of his trial. *Erman*, 49 Md. App. at 612, 434 A.2d at 1036. The Court of Special Appeals ultimately treated the motion as one for a mistrial, concluding that there was a "manifest necessity" for separating the trials. *Erman*, 49 Md. App. at 616, 434 A.2d at 1038. The intermediate appellate court, however, concluded that the standard to be employed by the trial judge in ruling on such a motion is that "as Rule 745 [now rule 4-253] contemplates, there must be prejudice to a defendant when joined for trial with another defendant and that this prejudice must be such as to prevent him from receiving a fair trial before he is entitled to a *severance or a mistrial*." *Erman*, 49 Md. App. at 614, 434 A.2d at 1037. During the joint jury trial of Erman and his codefendant Brent, several items of evidence admissible only against Brent were introduced. *Erman*, 49 Md. App. at 612, 434 A.2d at 1036. The evidence included

> testimony of alleged criminality or misconduct on the part Brent . . . for example, Brent's threats on people's lives, his plans to kill one Stearck, shooting at a neighbor's dog, and shooting at the house of an acquaintance of his with whom he had had some trouble and for which he was charged with assault with intent to murder.

*Id*. The judge, on several occasions, gave limiting instructions to the jury that it was to not consider the evidence against Erman; Erman in turn, made several motions for mistrial and severance. *Id.* On appeal, the Court of Special Appeals reversed the trial court's denial of a mistrial and severance, and held that "the trial judge abused his discretion" in denying a severance. *Erman*, 49 Md. App. at 613, 434 A.2d at 1036. The intermediate appellate court held that the damage resulting from the reception of non-mutually admissible evidence denied Erman a fair trial, explaining:

- 30 -

> In the instant case, the type of evidence as to Brent only which caused the trial judge to instruct the jury repeatedly seems to us to have been increasingly prejudicial to Erman, particularly as the number of incidents grew. In short, we view the cumulative effect of such evidence as denying Erman a fair trial. The argument for a joint trial—judicial economy—has merit. Nevertheless, this must always be balanced against the prejudice to a defendant[.]

*Erman*, 49 Md. App. at 616, 434 A.2d at 1038. In so holding, our colleagues on the intermediate appellate court noted that where "the instances of the need to so instruct the jury are many, the effectiveness of such instructions may very well diminish to the point of becoming meaningless." *Erman*, 49 Md. App. at 615, 434 A.2d at 1037. Thus, in both *Day* and *Erman*, the manifestation of prejudice to the defendant was the risk that the jury may disregard a limiting instruction and consider, against the defendant, evidence that would be inadmissible had he been tried separately. Under these circumstances, the trial court's exercise of discretion in denying severance and instead issuing a limiting instruction did not prevent an injustice. In *Day*, prejudice occurred when non-mutually admissible evidence was introduced that would lead to the natural conclusion that one or both of the defendants was lying. In *Erman*, prejudice occurred when non-mutually admissible evidence was introduced in a degree so great as to render the several limiting instructions repetitive, mundane, and meaningless, so as to fall upon deaf ears. In each case, the trial judge abused his discretion in denying a severance in light of such risk.

**Application of Rule to Case**

Here, Hines was significantly prejudiced by the actual admission of evidence that, although admissible against Allen, was inadmissible against Hines. As in *Day*, the trial judge in the case *sub judice* was aware that the non-mutually admissible statement was

- 31 -

going to be offered by the State at trial. 196 Md. at 387, 76 A.2d at 730. Moreover, as in *Day*, the trial judge was advised of the exact prejudice that was likely to ensue (and did in fact ensue) if the statement were introduced at a joint trial. *Id.* The trial judge in the case at bar had discretion under the rule as to how to handle the likely prejudice; the judge could have granted a severance or he could have adequately redacted Allen's statement so that it would not implicate Hines. The trial judge elected to do neither.[14] Instead, he admitted the statement into evidence, with all of the references to "Mike" and all of the detectives' commentary, and gave a limiting instruction to the jury. Here, just as in both *Day* and *Erman,* we are unwilling to assume the jury was able to follow the limiting instructions given by the trial judge. In the present case, it would have been practically impossible for the jurors to dismiss from their minds the statements of Allen when evaluating the evidence against Hines.

Even as redacted to omit any express reference to "Tevin Hines," Allen's statement implicated Hines in a damaging way, which resulted in prejudice to Hines. The statements Allen made about "Mike" were played for the jury along with the detectives' statements of disbelief. This, coupled with the detectives' interest in "Mike" and questions about the man in the surveillance video[15] (who was clearly Hines) unequivocally indicated to the

---

[14] We note that the State could have avoided the fairness issue altogether by electing not to enter Allen's statement in its case in chief.

[15] "Questions alone *can* impeach . . . they can insinuate; they can suggest; they can accuse[.]" *Craig v. State*, 76 Md. App. 250, 292, 544 A.2d 784, 805 (1988) *vacated on other grounds*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

jury that the detectives knew "Mike" to be fictional, knew that the man in the video and the man Allen claimed to have spent his morning with was in fact Hines,[16] and were simply trying to get Allen to admit it. The statement further implicated Hines insofar that the jury heard separate testimony that Hines lives at 301 Lyndhurst. In the statement, Allen said "Mike" lives on the 300 block of Lyndhurst and Detective Carew indicated that he knew "Mike" lived at 301 Lyndhurst. Finally, we note that this was all in the context of Allen's statements being lies that were obvious to the detectives and invariably, the jury.[17] The State claims it introduced the statement to show Allen's consciousness of guilt.[18] In our view, Allen's statement that he was home during the morning juxtaposed with video surveillance showing him at the store in the morning would have served this purpose. However, admission of all of the statements about "Mike" and "Mike's" address largely served to point the finger at Hines, the codefendant sitting at the defense table, the man shown with Allen in the video, and the only person who could plausibly be "Mike".

---

[16] At one point, Allen tells detectives that he went to the store with "Mike". Allen is then shown footage of himself and Hines at the store (the same footage the jury saw at trial). When Allen denies knowing who Hines is, Detective Carew states, "You just walked to the store together and he gave you money?"

[17] The State relied upon Allen's statement in making its case during closing arguments. The prosecutor argued, "Mr. Allen made a statement that clearly shows that he was guilty. His words portrayed the fact that he was guilty, he showed his guilty mind." In our view, the obvious inference from this argument is that Hines is also guilty because Hines and "Mike" are one in the same.

[18] Hines notes that the jury could infer that Allen lied in order to insulate Hines from police suspicion. Thus the statement not only created the risk that the jury would know that "Mike" is Hines and use the statement against him, it also created the risk of inference that Hines was guilty and Allen was trying to protect him.

We cannot assume that the jury necessarily followed the limiting instruction when all signs pointed to Hines as being "Mike". Because the evidence implicated Hines in a manner so obvious that there is a risk that the jury would not have followed the limiting instruction and not have considered Allen's statement against Hines, the trial court erred in denying a trial severance.[19] This prejudice, Hines would not have encountered had his motion for severance been granted. We hold, therefore, that the trial judge abused his discretion in failing to sever the trial, and hold that Hines is entitled to a new trial.

**Harmless Error**

The State argues that under a harmless error analysis, reversal is not required. To establish a harmless error, the burden is upon the State to show beyond a reasonable doubt that the error "had no influence on the verdict." *Perez v. State*, 420 Md. 57, 68 n.5, 21 A.3d 1048, 1055 n.5 (2011). The State, ignoring the many ways in which Allen's statement implicated Hines, contends that the denial of severance was harmless error because Allen's statement was exculpatory and not prejudicial. The State also argues that the limiting instruction served to guard against prejudice engendered by the statement. For reasons discussed above, the statement was inculpatory and the limiting instruction insufficient to guard Hines from unfair prejudice. In *Dorsey v. State*, we explained that

---

[19] The judge would have been within his sound discretion to deny severance had he redacted the statement so as to remove any implication of Hines, such as reference to "Mike", the "other person" Allen was with, and "301 Lyndhurst." However, as admitted, the statement was unduly prejudicial to Hines and would not have been admitted against Hines had he been given a separate trial. Furthermore Hines' trial counsel clearly advised the trial judge of the specific prejudice caused by Allen's statements and a reasonable trial judge would have exercised his discretion to avoid injustice by either further redacting the statement or granting a severance.

when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated.

276 Md. 638, 659, 350 A.2d 665, 678 (1976). Here, because the admission of Allen's statement unfairly prejudiced Hines and created the risk that the jury would ignore the limiting instruction and consider this inadmissible evidence against Hines, we cannot say that the error in no way influenced the verdict. *See id.* We are thus unable to declare the error in denying severance harmless beyond a reasonable doubt.

## Conclusion

For the forgoing reasons, we hold that the trial court committed reversible error in denying a severance under Maryland Rule 4-253. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS.**