*Jonathan Hemming v. State of Maryland*, No. 48, September Term, 2019.  Opinion by Greene, J.

**CRIMINAL LAW — JOINT OR SEPARATE TRIAL OF SEPARATE CHARGES — BIFURCATION**

The Court of Appeals held, as a matter of law, that the trial court did not have discretion under Maryland Rule 4-253(c) to bifurcate the possession of a regulated firearm by a prohibited person counts from the remaining counts of the indictment—with the counts being decided by different factfinders within a single trial.

**CRIMINAL LAW — JOINT OR SEPARATE TRIAL OF SEPARATE CHARGES — BIFURCATION**

The Court of Appeals held that a trial court has the discretionary authority under Rule 4-253(c) to bifurcate possession of a regulated firearm counts, from other counts, into a singular two-phased trial in which the jury first hears evidence relating to the other charges, deliberates as to the defendant's guilt, and then hears evidence pertaining to the possession of a regulated firearm by a prohibited person counts and determines a defendant's guilt as to those charges.

**CRIMINAL LAW — JOINT OR SEPARATE TRIAL OF SEPARATE CHARGES — BIFURCATION**

The Court of Appeals held that the trial court did not abuse its discretion in denying Defendant's motion to bifurcate counts in a hybrid judge/jury trial proceeding, because the court did not maintain the discretion under Rule 4-253(c) to permit the procedure.

Circuit Court for Montgomery County
Case No. 129658-C
Argued: February 7, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 48

September Term, 2019

_____

JONATHAN HEMMING

v.

STATE OF MARYLAND

_____

McDonald
Watts
Hotten
Getty
Booth,
Biran,
Greene, Clayton, Jr. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Greene, J.

_____

Filed: June 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In the instant appeal, we are asked to review the trial court's denial of Petitioner Jonathan Hemming's motion to bifurcate two counts of possession of a regulated firearm by a prohibited person from the remaining counts in an indictment. This case presents an opportunity for the Court to consider a unique procedural occurrence, previously examined by this Court in *Galloway v. State*, where a trial judge bifurcates the possession of a regulated firearm by a prohibited person charges from the remaining charges and determines a defendant's guilt as to the firearm charges. 371 Md. 379, 383, 412, 809 A.2d 653, 656 (2002). This results in a hybrid judge/jury trial in which the judge determines the defendant's guilt with respect to the charge of possession of a regulated firearm by a prohibited person and the jury determines guilt as to the remaining charges (the "bifurcated hybrid trial procedure"). As represented by Mr. Hemming, the procedure would essentially encompass a single trial split between the two factfinders. Our primary inquiry towards this end is whether the relevant Maryland Rule permits this procedure. For the reasons stated below, we hold that the bifurcated hybrid trial procedure split between two factfinders is not permitted under Maryland Rule 4-253(c) and is inconsistent with our holding in *Carter v. State*, 374 Md. 693, 824 A.2d 123 (2003). Further, we approve of the *Joshua*-style bifurcated criminal jury trial, under which the bifurcation of possession of a regulated firearm by a prohibited person counts from other charges is permitted, if a defendant's guilt as to all of the charges is determined by the same factfinder. *See United States v. Joshua*, 976 F.2d 844 (3d Cir. 1992).

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, investigators from the Montgomery County Police Department's Special Investigations Division ("SID") wanted to speak with Mr. Hemming concerning an ongoing investigation.[1] At the time, Mr. Hemming had an open warrant stemming from his failure to appear before the District Court of Maryland for a drug possession offense.

On May 18, 2016, based on the open warrant, several SID officers began surveilling Mr. Hemming at his home in Gaithersburg by setting up a perimeter around the residence. The SID officers observed Mr. Hemming exit his home with a female companion, who was later identified as his wife. The pair entered a gray Honda Civic and left the residence with the SID officers in tow. As later testified to by Sergeant Bullock, the SID "case agent" instructed the officers to perform a "soft arrest" on Mr. Hemming.[2]

The SID officers followed Mr. Hemming from his residence to a commercial property located on Comprint Court off of Shady Grove Road in Montgomery County. On

---

[1] The SID officers who eventually made contact with Mr. Hemming are Sergeant Charles Bullock, and Detectives Don Oaks and Volpe. Detective Volpe's first name is not contained within the record. As recognized by the Court of Special Appeals, his name was incorrectly transcribed as "Bolpe" throughout the second volume of trial transcripts.

According to Sergeant Bullock, the SID unit is a unique unit that only becomes involved in certain cases when its assistance is required by detectives of its own division, the major crimes division, or police from another jurisdiction.

[2] Sergeant Bullock contrasted a "soft arrest" from a "hard block" or "hard takedown" style arrest. He indicated that a soft takedown is one in which police make contact with a suspect, inform him of the arrest warrant, converse with the suspect, and attempt to get the suspect to surrender peacefully. Whereas, under the "hard" approach, SID officers "block all sides of the car[,]" command the subjects inside the vehicle to exit, and "put them on the ground and effect the arrest."

Comprint Court, Mr. Hemming parked the vehicle "face-in" in front of an office building. He and his wife exited the vehicle and entered the building and remained inside for approximately a half an hour to forty minutes before returning to the vehicle. That day, Sergeant Bullock was accompanied by eight other plainclothes SID officers. Each of the officers wore outer carrier vests, neck badges, and arm bands indicating that they were law enforcement officers. The SID officers also wore two or more forms of identification indicating that they were, in fact, police officers.

Detective Volpe parked his vehicle, a pickup truck, in the space directly behind the Honda Civic in which Mr. Hemming and his wife were traveling. The SID officers then observed Mr. Hemming and his wife returning to the vehicle, with Mr. Hemming entering the driver side and his wife entering the passenger side of the vehicle. Within seconds of the couple returning to the vehicle, the SID officers performed the "soft arrest" technique detailed by Sergeant Bullock. To initiate the stop, the SID officers turned on the headlights of their vehicles and momentarily sounded a siren to indicate a police presence. Detective Volpe then backed his pickup truck into the rear bumper of the Honda, blocking the vehicle into the parking space.

Thereafter, Sergeant Bullock and Detective Oaks approached the driver's side of Mr. Hemming's vehicle on foot, with Detective Oaks in the lead and Sergeant Bullock in tow. Detective Oaks approached Mr. Hemming and informed Mr. Hemming that he was a police officer, the officers had a warrant for Mr. Hemming's arrest, and they desired to speak with Mr. Hemming. According to the officers, Mr. Hemming initially seemed compliant. Mr. Hemming attempted to get out of the vehicle, and Detective Oaks moved

- 3 -

away from the driver's side door of the car to allow Mr. Hemming to exit. Suddenly, as Mr. Hemming was exiting, he got back in the vehicle and attempted to close the driver's side door.

In response, Detective Oaks put himself between the vehicle and its driver's side door to block Mr. Hemming from closing it. Detective Oaks began struggling with Mr. Hemming and attempted to remove him from the vehicle. Thereafter, Sergeant Bullock entered the rear passenger seat of the vehicle and attempted to assist Detective Oaks in gaining control of Mr. Hemming.

During the fracas, Detective Oaks noted that Mr. Hemming retrieved a "black cylindrical object" from inside the vehicle and held it in his left hand. Unbeknownst to Detective Oaks at the time, the object Mr. Hemming was holding was actually an improvised firearm colloquially referred to as a "zip gun."[3] While the improvised firearm

---

[3] A "zip gun" is "the name applied to a single-shot, crude, home-made firearm" that is generally "unreliable, and usually more dangerous to the shooter than to his intended victim." Bruce Barak Koffler, *Zip Guns and Crude Conversions—Identifying Characteristics and Problems*, 61 J. Crim. L. Criminology & Police Sci. 520, 520 (1969). As later testified to by the State's firearm expert, Ronald K. Davis—an officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives—the improvised firearm that Mr. Hemming held was "an improvised firearm that's designed to fire [twelve] gauge ammunition[.]" He also testified that the firearm was constructed from a length of pipe with a "standard pipe plug" fashioned onto the end of it. The pipe plug held the shotgun shell and had a hole drilled through its center, which the shooter would use to ignite the primer on the shell by striking it with a thin metal object. He testified that he had test fired the improvised firearm and it was operable.

was pointed towards Detective Oaks' head, Mr. Hemming began striking the bottom of it with a long thin metal object.[4]

As Detective Oaks and Sergeant Bullock attempted to gain control over Mr. Hemming, Detective Volpe removed Mr. Hemming's wife from the vehicle. He then entered the vehicle, through its passenger side, to assist the two other officers with Mr. Hemming. While assisting Detective Oaks and Sergeant Bullock, Detective Volpe noticed a metal tube in Mr. Hemming's left hand and "a 12-penny nail" in his right hand that Mr. Hemming was attempting to insert into the bottom of the pipe. Detective Volpe warned his fellow officers of the device.

After briefly struggling with Mr. Hemming, Detective Oaks beckoned his colleagues to use a taser gun to subdue Mr. Hemming. As a result, Detective Volpe tased Mr. Hemming. After tasing Mr. Hemming, the officers were able to remove Mr. Hemming from the vehicle. Despite this, Mr. Hemming continued to struggle with the officers as they attempted to handcuff him. Nonetheless, the officers were eventually able to gain control of Mr. Hemming, handcuff him, and effectuate an arrest. Upon Mr. Hemming's arrest, the officers uncovered a second improvised firearm in Mr. Hemming's rear pant pocket.[5] The officers also recovered several twelve-gauge 00 "buckshot" shells from the

---

[4] Detective Oaks later testified that Mr. Hemming struck the improvised firearm with a screwdriver or metal rod. The State's expert witness on firearms later identified the object that Mr. Hemming used to strike the bottom of the zipgun was a jeweler's screwdriver.
[5] Mr. Davis testified that the improvised firearm recovered from Mr. Hemming's rear pant pocket was not a "firearm" because "it was missing a critical part, the barrel."

vehicle and one from the improvised firearm Mr. Hemming had brandished during the struggle with the SID officers.[6]

Subsequently, Mr. Hemming was charged by indictment with two counts of attempted first-degree murder (counts one and two), two counts of attempted second degree murder (counts three and four),[7] two counts of first-degree assault (counts five and six), two counts of use of a firearm in the commission of a crime of violence (counts seven and eight), possession of a firearm after having been convicted of a felony drug crime (count nine), possession of ammunition by a person who is prohibited from possessing a regulated firearm (count ten), two counts of possession of a regulated firearm after having been convicted of a crime of violence (counts eleven and twelve), and resisting arrest (count thirteen). On February 5, 2018, the Circuit Court for Montgomery Count held a trial in the matter.

At the start of trial, Mr. Hemming moved to bifurcate counts nine through twelve, the possession of a regulated firearm by a prohibited person and ammunition counts,[8] from the remaining counts. He suggested that counts one through eight and thirteen be decided by a jury and that the trial judge determine his guilt as to the possession of regulated firearm

---

[6] Mr. Davis also testified that twelve gauge 00 shells contain nine thirty-three caliber pellets and are generally used for big game hunting but are occasionally used as an anti-personnel load in the law enforcement context.

[7] Mr. Hemming was charged with two counts of attempted first-degree murder and first-degree assault, in reference to both Sergeant Bullock and Detective Oaks as victims.

[8] For simplicity's sake, we hereinafter refer to these counts as "possession of a regulated firearm by a prohibited person" without specific reference to the count concerning the possession of ammunition.

by a prohibited person counts in a singular hybrid judge/jury trial. Mr. Hemming's counsel indicated that Mr. Hemming was willing to waive his right to a jury trial on the possession of a regulated firearm by a prohibited person counts. Mr. Hemming urged the court to bifurcate the counts based on the premise that bifurcation would ameliorate any potential prejudice that may result from the jury hearing evidence of his prior conviction or a stipulation concerning his disqualification from possessing regulated firearms.

In response, the State argued that bifurcation of the charges was inappropriate based on the potentiality of legally inconsistent verdicts between the jury and judge. In particular, the State argued that, if the jury acquitted Mr. Hemming on counts seven and eight, *i.e.*, use of a firearm in the commission of a crime of violence, and the trial judge found Mr. Hemming guilty on counts nine, eleven, and twelve, the trial judge's decision could be overturned on appeal as an inconsistent verdict, due to the prohibition against examining the jury's reasoning underlying its verdict. The State indicated that the possibility of inconsistent verdicts was compounded by the fact that the case involved two improvised firearms. Mistakenly, the State argued that the operability of the firearm may become an issue and that counts nine, eleven, and twelve required operability as an element.[9]

After reviewing this Court's decision in *Galloway v. State*, the trial court denied Mr. Hemming's motion to bifurcate. The trial judge commented that he found "no authority" under Rule 4-253(c) to bifurcate multiple counts in a singular hybrid judge/jury trial and

---

[9] This assertion was made in error, because we have held that conviction under Public Safety Article ("PS") § 5-133(c) does not require an operable firearm. *Moore v. State*, 424 Md. 118, 122, 34 A.3d 513, 515 (2011).

denied Mr. Hemming's motion "in light of the potential of inconsistent verdicts that [has] been represented by the State[.]" The trial court contemplated that utilizing a stipulation, under *Carter v. State*, 374 Md. 693, 824 A.2d 123 (2003), that indicated Mr. Hemming was prohibited from possessing regulated firearms would be "as least prejudicial as possible."

After the court denied Mr. Hemming's motion, the State and Mr. Hemming agreed to stipulate that Mr. Hemming was a "prohibited person." Based on events occurring after the trial judge's denial of Mr. Hemming's motion to bifurcate, the stipulation informed the jury that "the defendant was previously convicted of a crime that disqualifies him from possessing a regulated firearm." Mr. Hemming's counsel noted that, although ordinarily, he would only be willing to stipulate that a defendant was a prohibited person, he was willing to advise the jury that Mr. Hemming had previously been convicted of a disqualifying crime. This is so because he had indicated that Mr. Hemming had previously been convicted of a crime during his opening statement (having stated in opening remarks that "[Mr. Hemming] has some prior records. He's going to tell you about that. He's not hiding anything.").

At trial, Mr. Hemming testified that the building off of Comprint Court that he and his wife visited was a neurologist's office. He stated that his wife had previously been diagnosed with a neurological condition. According to Mr. Hemming, that day, if his wife received a negative prognosis, they had planned to drive to another location and commit suicide. He testified that he was in possession of two improvised firearms, because, under their agreed suicide pact, they would each use one of the weapons to end their lives. In contrast to Mr. Hemming's testimony, Detective Dimitri Ruvin, an investigator who

requested SID's involvement, testified differently as to Mr. Hemming's reason for possessing the improvised firearms. Detective Ruvin testified that, after his arrest, Mr. Hemming informed him that he possessed the devices because "some people [were] not real happy with [him]."

The jury found Mr. Hemming guilty of attempted first-degree murder of Detective Oaks, first-degree assault on Sergeant Bullock, two counts of use of a firearm in the commission of a crime, possession of a regulated firearm by a prohibited person, possession of ammunition by a person who is prohibited from possessing a regulated firearm, and resisting arrest. The court sentenced Mr. Hemming to life in prison, plus an additional forty years imprisonment.

Mr. Hemming then appealed the circuit court's judgment to the Court of Special Appeals. Mr. Hemming presented three issues for the intermediate appellate court's review, one in which Mr. Hemming challenged the sufficiency of the evidence undergirding his convictions, one concerning a sentencing issue, and one relevant to the issue presently before us:

> Did the circuit court abuse its discretion in refusing to bifurcate the counts charging possession of a regulated firearm by a disqualified person and possession of ammunition by a person who is disqualified from possessing a regulated firearm, with those counts being tried by the court, and the remaining counts being tried by the jury in a single trial?

*Hemming v. State*, 624, SEPT.TERM, 2018, 2019 WL 2881019, at *1 (Md. Ct. Spec. App. July 3, 2019), *cert. granted*, 466 Md. 215, 217 A.3d 1131 (2019).

The Court of Special Appeals did not determine, however, whether a trial judge in a criminal case has authority to apply the hybrid judge/jury trial procedure because it

- 9 -

concluded that the trial judge properly exercised his discretion in denying Mr. Hemming's motion to bifurcate. *Id.* at *5 ("We are not compelled to decide whether a circuit court judge has the discretion to bifurcate the decision-making function in a single trial procedure as we conclude that if the trial judge had that discretion here, he properly exercised it to deny Hemming's bifurcation request."). Primarily, the intermediate appellate court noted that the trial judge properly exercised his discretion in denying Mr. Hemming's motion to bifurcate based on the possibility of inconsistent verdicts. *Id.* at *6. Accordingly, the Court of Special Appeals affirmed the circuit court's judgment, vacated the sentence on count seven and remanded that count for re-sentencing based on an issue irrelevant to the instant appeal.

Mr. Hemming then petitioned this Court for a writ of certiorari, which we granted on October 9, 2019. *Hemming v. State*, 466 Md. 215, 217 A.3d 1131 (2019).

*Galloway v. State*

In *Galloway v. State*, the trial court utilized the bifurcation procedure that Mr. Hemming urges this Court to now expressly authorize. 371 Md. 379, 383, 809 A.2d 653, 655 (2002). In that case, Mr. Galloway was charged with several counts including "attempted murder, assault, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, carrying a handgun (counts 1 through 7) and possession of a firearm after having been convicted previously of a crime (counts 8 and 9)." *Id.* at 382, 809 A.2d at 655. Mr. Galloway requested that the jury determine his guilt as to counts one through seven and that, after the jury returned its verdict on counts one through seven, the trial judge determine his guilt as to counts eight and nine. *Id.* at 383–84, 809 A.2d at 656.

- 10 -

After deliberating, the jury found Mr. Galloway not guilty on counts one through seven. *Id.* at 384, 809 A.2d at 656. The next day, the trial judge found Mr. Galloway guilty as to counts eight and nine—the possession of a regulated firearm by a prohibited person counts. *Id.*

On appeal, we were asked to determine whether, based on principles of Double Jeopardy, the inconsistent verdicts rendered by the judge and jury were improper. *Id.* at 384, 809 A.2d at 656–57. The procedure utilized in *Galloway* was identified as a "unified proceeding with a hybrid decision, part jury trial and part court trial." *Id.* at 388, 809 A.2d at 659. Ultimately, we held that the inconsistency between the trial court and jury's verdicts was impermissible and reversed the circuit court's judgment. *Id.* at 416–17, 809 A.2d at 676. Because of the unique procedural posture of *Galloway*, our resolution of the inconsistent verdict issue did not require us to determine whether the bifurcated hybrid judge/jury trial procedure is authorized by Maryland law. *Id.*

Although we did not specifically analyze the bifurcation of possession of a regulated firearm by a prohibited person charges in a hybridized judge/jury trial in *Galloway*, this issue permeated the Court's discussion. The Majority, in assessing whether the procedure is authorized within the State, commented,

> [t]he procedure utilized by the circuit court, *i.e.*, the bifurcation of the decision making function between a jury and a judge in respect to different counts of a single indictment in a single trial is not expressly authorized in Maryland, or anywhere else as far as our research has revealed.

*Id.* at 385, 809 A.2d at 657. Moreover, the *Galloway* Majority left open the question of whether the hybrid judge/jury trial procedure is permitted under Maryland law:

- 11 -

We note that the present case is an instance of a hybrid jury/bench trial on the merits. In an appropriate case we might necessarily be faced with an initial question of whether a trial judge has the discretion to grant the single trial procedure used in the instant case. We shall not resolve that issue in this case, as the case can be fully resolved on other important issues. Our declining to address this specific bifurcation issue, should not be construed as any approval or disapproval of the procedure.

*Id.* at 396–97, 809 A.2d at 664 (footnotes omitted).

The entire Court, however, was not in agreement. The Concurring Opinion in *Galloway* contended that the bifurcated hybrid trial procedure is one method to limit the potential prejudice a defendant experiences based on the introduction of evidence concerning a prior disqualifying conviction:

Because of the potential for prejudice, on motion or by agreement, the court may sever the CIP [criminal-in-possession] count for later trial, which could be before a different jury or, if the defendant waives a jury, before a judge. To avoid separate trials, which could require the empaneling of a new jury and a repetition of much of the evidence presented to the first jury, the court may take the intermediate step, as was done in *United States v. Joshua*, 976 F.2d 844 (3d Cir.1992), of bifurcating the CIP charge—allowing the jury to consider only the current substantive charges first, and then, after it renders a verdict on those charges, having that same jury hear the additional evidence and then consider the CIP charge . . . . As the *Joshua* court pointed out, not everyone agrees that the bifurcation approach is a good one, even where the jury ends up hearing all of the charges.

*Id.* at 418, 809 A.2d at 677 (Wilner, J., concurring). Judge Wilner also noted that such prejudice may be overcome where a defendant enters a stipulation as to his or her prohibited status. *Id.* Judge Wilner also left open the possibility of dual factfinders, as suggested by Mr. Hemming in this case. *Id.* ("Presumably, the bifurcated CIP charge could later be heard by the judge, provided the defendant agrees to waive his right to have the jury consider it.").

- 12 -

The Dissenting Opinion specifically endorsed the procedure and commented that the Court should "hold that implementation of the simultaneous-trial procedure, although not traditional, strikes an appropriate balance between the twin concerns of prejudicial joinder and judicial economy, and is within the sound discretion of the trial court to grant." *Id.* at 423–24, 809 A.2d at 680 (Harrell, J., dissenting).

In *Galloway*, this Court invited the Standing Committee on Rules of Practice and Procedure (the "Rules Committee") to examine and study the bifurcated hybrid trial procedure, make a recommendation, and to consider any necessary modification to the associated Maryland Rules. *Id.* at 397 n.14, 809 A.2d at 664 n.14 ("[W]e shall notify [the Rules Committee] of this issue in order that the Rules Committee may study it, and if it deems appropriate, make recommendations to the Court. In that process there will be adequate opportunity for concerned entities to participate and make their views known in the study process."). Since *Galloway*, this Court has not considered a case under a similar procedural posture. Based on the Court's comments in *Galloway*, the Rules Committee later considered proposing amendments to this Court concerning the procedure but ultimately declined to do so. *See infra* at 20–22.

## STANDARD OF REVIEW

We have previously determined that, in terms of Rule 4-253, a trial court's decision to sever or join the trials of multiple criminal defendants or multiple counts is ordinarily committed to the sound discretion of the trial judge and is reviewed for abuse of discretion. *State v. Hines*, 450 Md. 352, 366, 148 A.3d 1247, 1255 (2016); *Galloway*, 371 Md. at 395, 809 A.2d at 663 ("[T]he decision to join or sever charges ordinarily lies within the sound

- 13 -

discretion of the trial court."); *McKnight v. State*, 280 Md. 604, 608, 375 A.2d 551, 554 (1977). "[O]rdinarily, where only one defendant is involved, the judge may order two or more offenses, whether felonies or misdemeanors, or any combination of them, [to] be tried together if the offenses are of the same or similar character." *Frazier v. State*, 318 Md. 597, 607, 569 A.2d 684, 689 (1990) (citing *Graves v. State*, 298 Md. 542, 544, 471 A.2d 701, 702 (1984)).

To guard against potential prejudice in the trial, as a matter of law, "[i]f it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires." *Frazier*, 318 Md. at 607, 569 A.2d at 689. Conversely, at a jury trial of a defendant charged with similar but unrelated offenses, he or she is entitled to a severance where the defendant establishes that the evidence as to each individual offense would not be mutually admissible at separate trials of the offenses. *Id.* at 608, 569 A.2d at 690.

Under Rule 4-253(c), a trial judge may remedy prejudicial joinder, in addition to severing counts, by "grant[ing] any other relief as justice requires." Accordingly, when we review a trial court's decision to sever, based upon allegations of prejudicial joinder, for abuse of discretion under Rule 4-253(c), we implicitly recognize that the decision whether or not to permit bifurcation of counts would be ordinarily reserved to the trial court's discretion. *See Galloway*, 371 Md. at 422–23, 809 A.2d at 679 (Harrell, J. dissenting).

In *Carter v. State*, 374 Md. 693, 709, 824 A.2d 123, 133 (2003), we held that the defendant was not entitled to a severance of the possession of a regulated firearm by one

- 14 -

previously convicted of a crime of violence charge from the remaining charges because the bases of the crimes were one and the same. As to the propriety of the bifurcation of the criminal proceeding in *Carter*, we held that in a jury trial, the trial judge does not have the discretion to allow bifurcation of the elements of the possession of a regulated firearm by a prohibited person charge to prevent the jury from considering an element of that charge, even if the defendant requests that the trial judge decide the felony element and the jury decide the possession element. 374 Md. at 709–15, 824 A.2d at 133–36. We explained that the jury is entitled to know the criminality of the defendant's alleged conduct and the State should be allowed to present evidence of all elements of the offense of possession of a regulated firearm by a person previously convicted of a disqualifying crime to the jury. *Id*. Moreover, we held that when the defendant requests, in a possession of a regulated firearm by a prohibited person case, to stipulate or admit he was convicted of a disqualifying crime, the trial court must accept the stipulation or admission and the name or nature of the previous conviction should not be disclosed to the jury. *Id.* at 720–21, 824 A.2d at 139–40. The trial judge is directed to inform the jury that the defendant admits the conviction of a crime for which he or she is prohibited from possessing a regulated firearm under the law. *Id.* at 720, 824 A.2d at 140.

We review legal issues *de novo*. *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (citing *Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002)). It is well settled that when interpreting the Maryland Rules of Procedure, we apply that same principle as if we were interpreting a statute or contract. *Tate v. State*, 459 Md.

587, 608, 187 A.3d 660, 672 (2018) (citing *State v. Daughtry*, 419 Md. 35, 67, 18 A.3d 60, 46 (2011)).

## DISCUSSION

All of the charges filed against Mr. Hemming were closely related and arose from a singular incident. He did not request the traditional severance of the charges and demand separate trials. Instead, prior to trial, Mr. Hemming moved to bifurcate count 9 (possession of a firearm after having been convicted of a felony drug crime), count 10 (possession of ammunition by a person who is disqualified from possessing a regulated firearm), and counts 11 and 12 (two counts of possession of a regulated firearm after having been convicted of a crime of violence) from the remaining counts. Under this procedure, "the jury would decide the defendant's guilt or innocence as to counts 1 through 8 and 13, and the court would decide guilt or innocence on counts 9 through 12, [intending] to avoid the prejudice that would flow from a stipulation that Mr. Hemming was prohibited from possessing a regulated firearm because of a disqualifying conviction." Thus, the question before this Court is whether the trial judge had discretion under Maryland Rule 4-253(c) to bifurcate separate counts between the judge and jury in a single trial. We shall hold that Maryland Rule 4-253(c) does not permit the trial judge to bifurcate separate counts between the judge and jury for a single trial. The Rule, however, does permit the trial judge to bifurcate counts between the same fact finder, subject to the sound discretion of the trial

judge. Accordingly, the burden rests upon Mr. Hemming to establish that the trial judge's denial of the motion to bifurcate was an abuse of discretion.

### *Under Rule 4-253(c), a Trial Court Does Not Have Discretion to Bifurcate Separate Counts Between Judge and Jury in a Single Hybridized Trial.*

The primary issue in the instant appeal is whether a trial judge has the discretion, under Maryland Rule 4-253(c), to bifurcate the possession of a regulated firearm by a prohibited person count from the remaining charges—with the counts being decided by different factfinders within a singular proceeding. Rule 4-253(c) does not expressly authorize the hybrid bifurcated trial procedure, and no Maryland or federal court has adopted the procedure. Moreover, permitting the hybrid judge/jury trial would create a host of potential procedural problems. Therefore, we ultimately conclude that a trial court does not maintain the discretion, under Rule 4-253(c), to bifurcate possession of a regulated firearm by a prohibited person counts from other charges—with the former being decided by the judge and the latter by a jury.

First, we review the statutory framework under the Public Safety Article ("PS") concerning the underlying offenses at issue in the instant appeal. PS § 5-133, formerly Article 27 § 445, restricts certain classes of individuals from possessing regulated firearms. There are several ways that an individual may be prohibited from possessing regulated firearms—including prior convictions of a drug crime or crime of violence. *See* PS § 5-133(b). Generally, to convict a defendant of possession of a regulated firearm by a prohibited person, the State must prove that a defendant was previously convicted of a

- 17 -

disqualifying crime as an element of the offense. *See Carter*, 374 Md. at 709–10, 824 A.2d at 133.

Despite this, a defendant has a "clear and compelling . . . interest in avoiding [the] introduction of prior crimes evidence." *United States v. Dockery*, 955 F.2d 50, 53 (D.C. Cir. 1992). This interest exists because, "the introduction of evidence of a prior conviction has the potential for grave mischief because of its tendency to 'divert[ ] the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character.'" *United States v. Bowie*, 142 F.3d 1301, 1305 (D.C. Cir. 1998) (alterations in original) (quoting *United States v. Jones*, 67 F.3d 320, 322 (D.C. Cir. 1995)).

In other words, with the introduction of evidence pertaining to a criminal defendant's prior convictions, "[t]he primary concern is that prior crimes evidence "weigh[s] too much with the jury and ... overpersuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Dockery*, 955 F.2d at 53. The concern over the potential prejudice a defendant may experience from the introduction of evidence concerning a prior conviction must be balanced with the "standard rule that the prosecution is entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186, 117 S. Ct. 644, 653, 136 L.Ed 2d 574 (1997). The joinder of possession of a regulated firearm by a prohibited person charge with other counts "must be informed by a respect for the special problems created by the introduction of other crimes evidence, and that it consequently will behoove prosecutors and trial judges to proceed with caution when situations similar

- 18 -

to this one face them in the future." *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C.

Cir. 1985). Next, we review the Maryland Rule primarily at issue.

Rule 4-253, titled "Joint or Separate Trials," permits joint trials of offenses and

defendants:

> (a) Joint Trial of Defendants. On motion of a party, the court may order a joint trial for two or more defendants charged in separate charging documents if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

> (b) Joint Trial of Offenses. If a defendant has been charged in two or more charging documents, either party may move for a joint trial of the charges. In ruling on the motion, the court may inquire into the ability of either party to proceed at a joint trial.

Md. Rule 4-253(a)–(b). The question presented in this case, however, centers around the

provision of Rule 4-253(c), which empowers a trial court with the discretionary authority

to remedy prejudice arising from certain types of joinder. The Rule, in pertinent part,

provides,

> [i]f it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

Md. Rule 4-253(c).

Although a trial judge may "order separate trials of counts[,]" the Rule does not

specifically contemplate the bifurcation of counts between two separate finders of fact

within a singular trial—our principal concern here.[10]  Mr. Hemming contends that the language of Rule 4-253(c), empowering a court to "grant any other relief as justice requires" encompasses the bifurcation of counts in a hybrid court/jury trial.  In contrast, the State argues that this Court has only interpreted this language to subsume limiting instructions or the redaction of evidence.  *See State v. Hines*, 450 Md. 352, 370, 148 A.3d 1247, 1257 (2016).  In assessing whether a joinder of counts or defendants was improper, our primary concern is potential prejudice that may befall a defendant.  *Id.* at 369, 148 A.3d at 1256.  Such an inquiry requires that we utilize a "balancing approach" in which we consider "the likely prejudice caused by the joinder . . . [and] considerations of economy and efficiency in judicial administration."  *Id.* (quoting *Frazier*, 318 Md. at 608, 569 A.2d at 689).

In the wake of *Galloway*, the Rules Committee considered the bifurcation issue. The minutes of the Rules Committee's January 9, 2004 meeting ("Rules Committee Minutes") reveal that the Rules Committee contemplated modifying Rule 4-252 (concerning mandatory motions in the circuit court) to include subsections (a)(6) which

---

[10] In the sphere of criminal procedure, bifurcation in Maryland has been extremely limited in its application.  Rule 4-314 permits, where a defendant pleads not guilty, not criminally responsible by reason of insanity ("NCR"), and elects a jury trial, a trial court to bifurcate the NCR and innocence phases of the trial in a "bifurcated . . . single continuous trial in two stages."  Rule 4-314(b)(1); *see also State v. Marsh*, 337 Md. 528, 537–38, 654 A.2d 1318, 1322–23 (1995); *Treece v. State*, 313 Md. 665, 685, 547 A.2d 1054, 1064 (1988). Previously, former Rule 4-343 required the bifurcation of the guilt or innocence and sentencing phases in capital cases.  *See Bruce v. State*, 328 Md. 594, 608, 616 A.2d 392, 399 (1992).  In 2013, the General Assembly amended several provisions of the Criminal Law Article repealing the death penalty.  *Bellard v. State*, 452 Md. 467, 472, 157 A.3d 272, 273 (2017).  Notably, there is no other Rule of Criminal Procedure that authorizes bifurcation in the context of the case at bar.

contemplated "[a] request for bifurcation of counts between the jury and the judge" and

subsection (h)(4) which concerned "[b]ifurcation of counts between the jury and the court."

The following Reporter's Note accompanied the proposed amendments to Rule 4-252:

> The Criminal Subcommittee considered the issue of hybrid jury/bench trials as directed by the Court of Appeals in the case of *Galloway v. State*, 371 Md. 379 (2002). The Subcommittee recommends changing Rule 4-252 by adding new subsections (a)(6) and (h)(4), which allow the Court to grant a motion to bifurcate the counts in a criminal case, so that some counts are considered by the jury and some by the judge. The Subcommittee is also proposing to add a sentence to the Committee note at the end of the Rule which clarifies that the new subsection allowing bifurcation of the counts does not apply to cases with multiple defendants.

Rules Committee Minutes at 44. Under the proposed changes to Rule, subsection (h)(4)

required that,

> [i]f the court grants a motion to bifurcate the counts between the jury and the court, the court shall question the defendant to make sure that the defendant voluntarily waives the right to seek relief later because of inconsistent verdicts between the court and the jury or because the jury is unable to reach a verdict. The court shall enter a written order assigning the appropriate counts to the court and to the jury for decision. If the judge defers the judge's verdict until the jury verdict comes in, and then the jury is unable to arrive at a verdict, the judge may nonetheless enter a verdict. The judge may return a verdict before the jury does so.

*Id.* at 43.

The Chair of the Rules Committee suggested that the proposed new language of

Rule 4-252 read as follows: "If the court grants a motion to bifurcate the counts between

the jury and the court, the court shall enter a written order assigning the appropriate counts

to the court and to the jury for a decision[.]" *Id.* at 45. Nonetheless, the Chair recognized

that an amendment to the Rule was likely unnecessary, given the availability of a

stipulation under *Carter*:

- 21 -

> The Chair commented that after *Galloway*, the Honorable Lynne Battaglia, Judge of the Court of Appeals, had authored an opinion, *Carter v. State*, 374 Md. 693 (2003), holding that if the defendant has committed a prior crime, such as possession of a firearm, which impacts a later trial on another charge, bifurcation of the charges in the later trial is not necessary. However, the jury is entitled only to know that the defendant's prior crime was one that prohibited further possession of a firearm, but not all of the details of the prior crime.

*Id.* at 45.

Several members of the committee, including Judge McAuliffe, expressed concern over the portion of the amendment that required defendants to waive any right to later complain of inconsistent verdicts. *Id.* at 44–45. Other members of the Rules Committee noted that bifurcation may be unnecessary with the availability of severance. *Id.* at 46. In contrast, some members suggested that severance may not be a practical alternative in all cases. *Id.* With these concerns established, the Rules Committee ultimately declined to submit a recommendation to amend Rule 4-252. The Rules Committee remanded the issue to the "Criminal Subcommittee" for additional review, study, and to make recommendations regarding the procedure. *Id.* The Criminal Subcommittee did not suggest additional modification of the Rule to expressly permit the procedure. Therefore, the Rules Committee's reluctance to recommend that the Court of Appeals amend the Maryland Rules to expressly permit the procedure, coupled with the comments of the Chairman in light of our opinion in *Carter*, suggests the Committee did not view that the adoption of the bifurcated hybrid trial procedure would be necessary or advisable.

### *Bifurcation of Trial and the <u>Carter</u> Stipulation*

As Rule 4-253(c) expressly empowers a trial court to sever counts and, according to Mr. Hemming authorizes bifurcation in a hybrid trial, we must examine the definitions of "severance" and "bifurcation" to better ascertain the implications of these terms. Unfortunately, some courts have "blended the issue of severance of one count from another, with the issue of bifurcation of the elements of a single count." *Carter v.* State, 145 Md. App. 195, 221, 802 A.2d 460, 475 (2002), *reversed* 374 Md. 693, 824 A.2d 123 (2003); *see*, *e.g.*, *United States v. Mangum*, 100 F.3d 164, 170–72 (D.C. Cir. 1996) (discussing severance of counts and bifurcation of elements within a single count and blending the two distinct concepts). Generally, "bifurcation is the separation of the legal issues or elements for a cause of action for separate trials, ordinarily by the same jury." Jennifer M. Granholm & William J. Richards, *Bifurcated Justice: How Trial-Splitting Devices Defeat the Jury's Role*, 26 U. Tol. L. Rev. 505, 511 (1995). Whereas, severance involves "the separation of issues or parties for trial by different juries." *Id.*

Despite the immediate relative clarity, not all definitions of severance and bifurcation indicate that they differ in terms of whether the severed or bifurcated counts are considered by the same factfinder. To this end, Black's Law Dictionary more broadly defines the term "bifurcate" as "[t]o separate into two parts, esp. for convenience. Multiple aspects of litigation, such as discovery, motions, defense, trial and jury deliberations, may be bifurcated to save time, reduce jury confusion, or achieve other benefits, with or without the same jury hearing both bifurcated parts." BIFURCATE, Black's Law Dictionary (11th ed. 2019). Similarly, Black's Law Dictionary defines "severance", within the context of criminal procedure, as "[t]he separation of criminal charges or criminal defendants for trial,

as when codefendants have conflicting defenses so that prejudice might result to one or more of them."  SEVERANCE, Black's Law Dictionary (11th ed. 2019).  Based on these definitions alone, a question remains as to whether the bifurcation of charges between separate finders of fact is permissible.  Thus, we look to federal precedent for guidance in our interpretation of Rule 4-253(c).

Rule 4-253(c) is patterned after Federal Rule of Criminal Procedure ("FRCP") 14 and both standards are "merely a restatement of the test applied at common law." *McKnight v. State*, 280 Md. 604, 608, 375 A.2d 551, 554 (1977); *see also Simmons v. State*, 165 Md. 155, 165–66, 167 A. 60, 64 (1933).  Therefore, we shall briefly examine federal decisions addressing bifurcation under FRCP 14.  To support his position, Mr. Hemming relies on decisions by the United States Courts of Appeals for the Second, Third, and Ninth Circuits.  These cases are generally distinguishable from the question before us in the instant appeal.

For example, in *Joshua*, the United States Court of Appeals for the Third Circuit analyzed an appeal in which the defendant moved to sever a charge of "possession of a firearm by a convicted felon[,]" and the State acquiesced in his motion.[11]  976 F.2d at 846.  Although the court denied the defendant's motion to sever, the court ordered a bifurcated proceeding under which the jury first heard evidence and deliberated on three substantive counts, and then heard evidence and deliberated on the possession of a firearm by a

[11] We refer to the crime as "possession of a firearm by a convicted felon[,]" because the controlling federal statute differs slightly from its Maryland counterpart.  *See Joshua*, 976 F.2d at 846; 18 U.S.C. §§ 922(g)(1), 924(e).

convicted felon count.[12]  *Id.*  The procedural posture in *Joshua* is distinct from the one considered by the Court in *Galloway* and proposed by Mr. Hemming, because the jury heard evidence as to all the counts within the indictment and deliberated on them.  Unlike here, the defendant in *Joshua* argued that the court erred in granting bifurcation and denying his motion to sever the possession of a firearm by a convicted felon count.  *Id.* at 847.

In rejecting the defendant's arguments, the *Joshua* court concluded that "the procedure adopted by the district court . . . strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy."  *Id.* at 848.  The court explained that, under the procedure, "[t]he defendant's criminal past is not made known to the jury until after [it has] reached a verdict with respect to the other charges. At the same time, this procedure is considerably more efficient than conducting an entire new jury trial on the weapon possession charge at a later date."  *Id.*  Implicitly, the court suggested that bifurcation of the possession of a regulated firearm by a prohibited person counts, from remaining charges, is preferable to severance in terms of judicial economy.  *Id.*  Moreover, in that case, the government and defendant agreed to a stipulation that informed the jury that the defendant was a convicted felon.  *Id.* at 846.  We note here that Judge Wilner, in his concurrence in *Galloway*, advocated for the possibility of a *Joshua*-style bifurcated trial.  *Galloway*, 371 Md. at 419, 809 A.2d at 677 (Wilner J.,

---

[12] The defendant in *Joshua* was indicted on four counts: armed bank robbery; use of a firearm during a crime of violence; receipt of a firearm with an obliterated serial number; and possession of a firearm by a convicted felon.  *Joshua*, 976 F.2d at 846.

concurring). As discussed below, the catchall language of Rule 4-253(c) permits bifurcation in this manner—as long as all charges are decided by the same factfinder.

Mr. Hemming also cites to *United States v. Nguyen* as the Ninth Circuit's endorsement of the bifurcated hybrid trial procedure. 88 F.3d 812 (9th Cir. 1996). In that case, a defendant was charged with two indictments, one of which involved a possession of a firearm by a convicted felon count. *Id.* at 814. Before the United States District Court for the Central District of California, the government moved to try the two indictments together. *Id.* The defendant moved to bifurcate the possession of a firearm by a convicted felon count, and the district court denied his motion. *Id.* On the issue of trying the two indictments together, the Ninth Circuit held that "[a]lthough severance or bifurcation is the preferred alternative, we conclude that the district court did not abuse its discretion by consolidating Nguyen's two cases and ordering that the two indictments be tried together." *Id.* at 818.

As to the defendant's arguments concerning bifurcation, the court concluded that the trial court did not abuse its discretion in denying his motion. *Id.* The court reached its conclusion after reasoning that the defendant failed to demonstrate that he was prejudiced by the joinder of the counts. *Id.* Moreover, the court found that two limiting instructions given by the district court to the jury, informing it that the evidence of the defendant's prior convictions should not be considered in deliberating on whether the defendant possessed the firearm, were sufficient to ameliorate any potential prejudice. *Id.* at 817–18. Nonetheless, because the defendant's motion was denied, the case contains no specific

reference to a hybrid trial procedure, with the jury deciding some counts and the judge deciding the possession of a regulated firearm by a prohibited person counts.

In *United States v. Jones*, another case relied upon by Mr. Hemming, the defendant argued that the trial court erroneously denied his motion to sever the possession of a firearm by a convicted felon count from the remaining charges. 16 F.3d 487, 489 (2d Cir. 1994). In that case, two trials were held. *Id.* In the first, the defendant was charged with "armed bank robbery, bank robbery involving an assault, and use of a firearm during a crime of violence[,]" which ended in a hung jury and "resulted in a mistrial." *Id.* Before the second trial, the government added two additional counts of possession of a firearm by a convicted felon—one charge relating to a firearm the defendant allegedly used during the robbery and the second relating to a firearm the defendant possessed upon arrest. *Id.*

The defendant moved to sever both of the possession of a firearm by a convicted felon counts, but the trial court denied his motion with respect to the count relating to the firearm used in the bank robbery and granted it with respect to the remaining possession of a firearm by a convicted felon count. *Id.* at 489. Although the trial judge gave a limiting instruction to the jury, informing it that the evidence of the defendant's prior conviction should not be considered in determining his guilt as to the other counts, the *Jones* court concluded that "the judge reminded the jurors repeatedly that Jones was a convicted felon[.]" *Id.* at 492–93. In addition, the *Jones* court concluded that the government merely added the possession of a firearm by a convicted felon counts "solely to buttress its case on the other counts." *Id.* at 492 (citing *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985)). Although the court specifically held that the defendant experienced prejudice

from the introduction of evidence concerning his prior disqualifying crimes, it ultimately did not find these grounds dispositive. Instead, the court reversed the defendant's convictions and remanded for a new trial under principles of "retroactive misjoinder[.]" *Id.* at 493.[13]

Although the *Jones* court commented that "[c]ourts have held that joinder of an ex-felon count with other charges requires either severance, bifurcation, or some other effective ameliorative procedure[,]" the court did not consider the bifurcation of counts in a hybrid judge/jury trial. *Id.* at 492 (citing *Joshua*, 976 F.2d at 848; *Dockery*, 955 F.2d at 50). As noted above, none of the cases cited by Mr. Hemming represent instances in which possession of a regulated firearm by a prohibited person counts were bifurcated and decided by the trial judge, where the remaining counts were determined by a jury. His

---

[13] The court explained that,"'[r]etroactive misjoinder' arises where joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions—render the initial joinder improper." *Id.* at 493 (citation omitted). The possession of a firearm by a convicted felon count considered in *Jones*, with reference to the firearm the defendant allegedly used during the robbery—the possession of a firearm by a convicted felon count that the trial court refused to sever—required the government to establish that the firearm traveled through interstate commerce. *Id.* at 492; 18 U.S.C.A. § 922(g)(1); *see also United States v. Gilliam*, 994 F.2d 97, 98 (2d Cir. 1993) (commenting that § 922(g)(1) "prohibits a convicted felon from possessing a firearm in or affecting commerce."). Because the *Jones* court held that there was insufficient evidence that the firearm entered into commerce, the court concluded that,

> [t]he jury learned that Jones had a prior felony conviction as part of the government's proof on count four. Having vacated the latter count, we must remand for a new trial on the robbery, armed robbery, and § 924(c) counts because, in retrospect, the jury should never have heard evidence of the vacated count.

*Id.* at 493.

reliance on these decisions is therefore unavailing and insufficient to compel us toward a more expansive interpretation of Rule 4-253(c)'s reference to "any other relief as justice requires."

In fact, our research reveals no federal precedent authorizing the bifurcated hybrid trial procedure. Several decisions involve situations where possession of a firearm by a convicted felon counts were bifurcated from other counts, but all counts were considered by the same jury. *United States v. Lee*, 549 F.3d 84, 88, 94–95 (2d Cir. 2008); *Joshua*, 976 F.2d at 847; *United States v. Busic*, 587 F.2d 577 (3d Cir. 1978). In contrast, several courts have considered the bifurcation of possession of a firearm by a convicted felon counts from other counts but have not discussed whether the counts would all be heard by the same factfinder. *See Jones*, 16 F.3d at 489; *United States v. McCode*, 317 Fed. Appx. 207, 212 (3d Cir. 2009); *United States v. Williams*, 504 Fed. Appx. 207, 212–13 (3d Cir. 2012); *United States v. Amante*, 418 F.3d 220, 224 n.2 (2d Cir. 2005).

Several federal appellate circuits have also held that a defendant is not entitled to have the elements of possession of a firearm by a convicted felon charges bifurcated. *United States v. Belk*, 346 F.3d 305, 308 (2d Cir. 2003) (bifurcation of the element of prior conviction); *United States v. Birdsong*, 982 F.2d 481, 482 (11th Cir. 1993) (same); *United States v. Collamore*, 868 F.2d 24, 27 (1st Cir. 1989); *United States v. Jacobs*, 44 F.3d 1219, 1220 (3d Cir. 1995); *U.S. v. Fields*, 507 Fed. Appx. 144, 147 (3d Cir. 2012); *United States v. Barker*, 1 F.3d 957, 959 (9th Cir. 1993); *United States v. Tavares*, 21 F.3d 1 (1st Cir. 1994). In the alternative, courts have held that where a "single offense of being a felon in

possession" is charged, a defendant is not entitled to bifurcation. *See United States v. Moore*, 376 F.3d 570, 573 (6th Cir. 2004) (citing *Baker*, 1 F.3d at 959).

In *Carter*, we addressed the authority of a trial judge to bifurcate elements of a criminal charge to prevent the jury from considering a particular element of that charge. We acknowledged various authorities that determined that "bifurcation of a trial by dividing it along the lines of the elements of the crime charged" would lead to serious problems. *Carter*, 374 Md. at 710-12, 824 A.2d at 134. In that case, the defendant argued that the trial judge erred in denying his motion to bifurcate the elements of the possession of a regulated firearm by a prohibited person count.[14] 374 Md. at 709–10, 824 A.2d at 133. In reliance on the federal precedent mentioned above, the *Carter* Court held that a trial court may not bifurcate the elements of a possession of a regulated firearm by a prohibited person charge, and "conclude[d] that the proper approach is that which encourages the entirety of the charge to be heard by the jury." *Id.* at 713, 824 A.2d at 135–36. The *Carter* Court emphasized that the one factor that militates against bifurcation of the elements when trying a defendant on criminal-in-possession charges is ensuring that the jury understands the criminality of the alleged conduct. *Id.* at 714. Thus, it is clear that the *Carter* Court would not have supported a criminal trial procedure that permitted the elimination of an element of a charge from the jury's consideration.

---

[14] The Court of Special Appeals has pointed out, in reliance upon our decision in *Carter*, that bifurcation of the elements of the offense of possession of a regulated firearm by a person previously convicted of a crime of violence is improper, even if the parties stipulated to the procedure. *See Nash v. State*, 191 Md. App. 386, 401–02, 991 A.2d 831, 840 (2010).

As detailed *supra*, under Rule 4-253(c) a defendant, for example, must demonstrate that he or she was or will be unduly prejudiced by the joinder of counts to permit the severance of counts or any remedy under the Rule's authorization to grant "any other relief as justice requires." *See McKnight*, 280 Md. at 607–08, 375 A.2d at 553–54.[15] We have advised that "[i]n any given case of similar offense joinder . . . the trial judge must balance the likely prejudice caused by the joinder against the important considerations of economy and efficiency in judicial administration." *Id.* at 609–10, 375 A.2d at 555. The Court of Special Appeals has previously noted that there are two identifiable issues relating to the presentation of evidence demonstrating a defendant's prior convictions. One of these issues is based on an evidentiary foundation and the other on principles of misjoinder:

> The joinder/severance problem is a classic aspect of the law of criminal procedure. Unlike the merely evidentiary issue of when, in the course of an ongoing trial, to admit evidence of 'other crimes' or 'other bad acts,' the joinder/severance issue must be resolved, of necessity, pretrial. The evidentiary problem, by contrast, may arise randomly throughout the course of a trial.

*Solomon v. State*, 101 Md. App. 331, 336, 646 A.2d 1064, 1066 (1994) (citation omitted). Although these two issues are distinct procedurally and in application, the required analyses overlap to the extent that—in both situations—courts often consider potential prejudice to a defendant. This concern for the potential prejudice a defendant may face permeates a court's analysis on the evidentiary issue:

> Thus, 'other crimes' evidence, even though independently and substantially relevant to some contested issue, may be excluded if its probative value is

---

[15] At the time of *McKnight*, Rule 4-253 was Rule 745. The two Rules contained identical provisions and our prior interpretations of Rule 745 offer guidance in our interpretation of Rule 4-253. *State v. Edison*, 318 Md. 541, 546 n.1, 569 A.2d 657, 659 n.1 (1990).

> exceeded by potential jury hostility or unfair prejudice. The leeway of this discretion lies in the direction of excluding otherwise admissible evidence. A decision to admit other crimes evidence which is clearly incorrect 'on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion.'

*State v. Faulkner*, 314 Md. 630, 641, 552 A.2d 896, 901 (1989) (citations omitted).

The bifurcation issue that we examined in *Carter* is procedurally distinct from that of the instant appeal—bifurcation of the *elements* of a possession of a regulated firearm by a prohibited person count. *See Carter*, 374 Md. at 709–13, 824 A.2d at 133–35. In that case, the defendant, Mr. Carter, was charged with unlawful discharge of a firearm within Baltimore City, possession of a regulated firearm by one previously convicted of a crime of violence, and possession of a regulated firearm by a person under twenty-one years of age. *Id.* at 697, 824 A.2d at 126. Before the trial court, Mr. Carter moved to have the court bifurcate the elements of the possession of a regulated firearm by a prohibited person charge. *Id.* at 709–10, 824 A.2d at 133. Under the procedure suggested by Mr. Carter, the jury would determine only whether Mr. Carter possessed a regulated firearm, and if the jury found Mr. Carter possessed the regulated firearm, "only then would [the jury] have . . . to determine the other elements of the charge, whether Carter had a qualifying conviction." *Id.* at 710, 824 A.2d at 133.

Ultimately, we disagreed with Mr. Carter's contention that the trial court erred in denying his motion to bifurcate the elements of the possession of a regulated firearm by a prohibited person count. *Id.* at 713, 824 A.2d at 135–36. The Court based its holding on federal precedent and concluded that "the proper course is to require a trial judge, when the defendant elects a jury trial, to allow the State to present evidence of all the elements

of a criminal-in-possession charge." *Id.* at 715, 824 A.2d at 136. The Court explained its

reasoning in stating,

> [a]lthough we, too, understand the dangers of introducing evidence of a defendant's previous conviction where the jury is considering a similar crime, we conclude that the proper approach is that which encourages the entirety of the charge to be heard by the jury. We are most persuaded by the predominant reasoning of the courts in *Collamore* and *Gilliam*. The jury's role in deciding guilt or innocence involves more than merely finding innocuous facts; rather, it requires a judgment about an individual's behavior based on an established code. This determination cannot be reached reliably without a full appreciation of the criminality of one's behavior. The jurors must know, therefore, why they are being asked to subject an individual to criminal punishment for possessing a firearm when, generally, such an act is not illegal. When the jury does not understand that the defendant may not possess a firearm because of a previous criminal conviction, its ability to carry out its role is impeded.

*Id.* at 713–14, 824 A.2d at 135–36. The Court did, however, devise a method whereby a

defendant's exposure to potential prejudice stemming from evidence of a prior

disqualifying conviction may be limited or ameliorated.

At trial, Mr. Carter offered to stipulate that he was previously convicted of a felony

or crime of violence—and was therefore prohibited from possessing a regulated firearm—

in an attempt to minimize the potential prejudice he would experience from the jury hearing

evidence of his prior conviction. *Id.* at 701–02, 824 A.2d at 128–29. Although the court

agreed to only inform the jury that the charge against Mr. Carter was "possession of a

firearm after being convicted of a crime of violence[,]" the State refused Mr. Carter's

request to stipulate and sought to introduce evidence that Mr. Carter had previously been

convicted of "robbery with a deadly weapon." *Id.* at 702, 824 A.2d at 129. The trial court

- 33 -

ultimately permitted the State to introduce evidence that Mr. Carter was previously convicted of "robbery with a deadly weapon." *Id.*

Before this Court, Mr. Carter argued that "because he was willing to admit the prior conviction, the State had no reason to introduce, and the court should not have admitted evidence that the prior conviction was for robbery with a deadly weapon." *Id.* at 715, 824 A.2d at 137. Mr. Carter contended that the jury should have only been informed that he was previously convicted of a felony or a crime of violence. *Id.* Relying primarily on *Old Chief*, the *Carter* Court recognized the implicit perils of presenting evidence to a jury that a defendant has been previously convicted of a crime. *Id.* at 716–17, 824 A.2d at 137–38 (citing *Old Chief*, 519 U.S. at 181–82, 117 S. Ct. at 650–51).

Agreeing with the Supreme Court's analysis in *Old Chief*, the *Carter* Court ascertained that, "the name and nature of a previous conviction, although 'technically relevant,' 'addresse[s] no detail in the definition of the prior-conviction element that would not [be] covered by the stipulation or admission [of that element].'" *Id.* at 720, 824 A.2d at 140 (quoting *Old Chief*, 519 U.S. at 186, 117 S. Ct. at 653). We concluded that, where a defendant offers to stipulate or admit that he or she was previously convicted of a disqualifying crime, the trial court must accept such a stipulation. *Id.* at 722, 824 A.2d at 141. We commented that, "in such situations, the name or nature of the previous conviction should not be disclosed to the jury." *Id.* at 720, 824 A.2d at 140. More specifically, we held that,

> when the defendant admits or the parties stipulate to the previous-conviction element of a charge under Section 445(d), the trial judge should inform the jury that the defendant admits that he or she has been convicted of a crime

for which he or she is prohibited from possessing a regulated firearm under the law. The judge should not describe the previous conviction with any more particularity or by using the categories of crimes under Section 445 (such as 'crime of violence' or 'felony').

*Id.* at 772, 824 A.2d at 141.

In *Carter*, the trial judge permitted "the State to introduce evidence that Mr. Carter previously had been convicted of 'robbery with a deadly' weapon." *Id.* at 721, 824 A.2d at 140. The admission of this evidence unduly prejudiced Mr. Carter by possibly luring the jury "into a sequence of bad character reasoning." *Id.* Consequently, the trial judge's refusal to strike the unnecessary language that characterized the prior conviction by its statutory categories of crimes under the relevant statutes, presently codified as PS § 5-133(b)–(c)(1), created a high potential for unfair prejudice to Mr. Carter and warranted our reversal of his convictions. *Id.* at 720–22, 824 A.2d at 140–41. Accordingly, the Court announced a rule of exclusion of unnecessary evidence to limit undue prejudice to the defendant. *Id*. at 722, 824 A.2d at 141.

Unlike the Supreme Court in *Old Chief*, the *Carter* Court promulgated a *per se* rule, under which the State is not permitted to object to such a stipulation and, if requested by a defendant, the trial court must grant or accept the stipulation. *Id.* at 720–21. Therefore, any defendant charged with the possession of a regulated firearm by a prohibited person is legally entitled to a stipulation that informs the jury that he or she is simply prohibited from possessing a regulated firearm, and disclosing no further detail regarding any prior convictions, if the defendant requests it. *See id.* at 772, 824 A.2d at 141.

- 35 -

Mr. Hemming recognizes the ameliorative effect of a *Carter* stipulation. In fact, at trial, Mr. Hemming entered a stipulation that he "was previously convicted of a crime that disqualifies him from possessing a regulated firearm." As noted above, Mr. Hemming's counsel was willing to advise the jury that Mr. Hemming had a prior conviction, because he referenced Mr. Hemming's prior arrests during his opening statement. Clearly, although this stipulation noted a prior conviction, it was permissible under *Carter*, as it did not "describe the previous conviction with any more particularity" than necessary and did not use "the categories of crimes under Section 445." *Id.* Therefore, the stipulation that Mr. Hemming entered into aided in limiting the potential prejudice he would have faced from the introduction of evidence concerning his prior disqualifying convictions under our interpretation of *Carter*.

Despite the ameliorative effect that a *Carter* stipulation may have, prejudice is only one component of our analysis under Rule 4-253(c). As noted above, we aim to strike an appropriate balance between the prejudice a defendant may face and the concerns of judicial economy and efficiency. *See McKnight*, 280 Md. at 610, 375 A.2d at 555. A *Carter* stipulation is generally preferable in terms of judicial economy and efficiency. The bifurcated hybrid trial procedure advocated by Mr. Hemming would require a two-phase trial, with a different factfinder presiding over each portion of the trial. Whereas, a *Carter* stipulation involves a singular trial, in which the factfinder is merely informed that the defendant stipulates that he or she is prohibited from possessing a regulated firearm. A *Carter* stipulation is the procedurally simpler method to address the potential prejudice inherent in cases involving charges of possession of a regulated firearm by a prohibited

person and appears to be preferable to bifurcation in terms of judicial economy. *See Carter*, 374 Md. at 722, 824 A.2d at 141.

Furthermore, Mr. Hemming argues that it "makes no sense to hold . . . that a trial judge has discretion to protect the defendant from unfair prejudice by severing the criminal-in-possession counts from the other counts, but lacks discretion to do so by bifurcating the same counts between judge and jury in a single trial." This assertion, however, overlooks the standards applicable to severance under Rule 4-253(c).[16] A separate standard—at least initially—governs a trial court's analysis on severance. Mr. Hemming discounts the issue of a defendant's partial waiver of his or her right to a jury trial. In situations where counts are severed, a defendant may waive his right to a jury trial and elect a bench trial in one trial and not do so in the other. Simply put, severance would obviate the need for an impermissible partial waiver of a defendant's right to be tried by a jury. *See infra* at 38–39. Moreover, Mr. Hemming fails to identify any cases in which a trial court has severed possession of a regulated firearm by a prohibited person counts from other counts, suggesting, in most cases, such counts are jointly tried. Accordingly, we find unpersuasive Mr. Hemming's argument, that a trial court's power to sever counts is inconsistent with a

---

[16] In situations where a defendant is charged with multiple offenses, "the judge may order two or more offenses, whether felonies or misdemeanors, or any combination therefore, to be tried together if the offenses are of the same or similar character." *Frazier*, 318 Md. at 607, 569 A.2d at 689 (citing *Graves v. State*, 298 Md. 542, 544, 471 A.2d 701, 702 (1984)). Where a defendant is "charged with similar but unrelated offenses" a defendant must establish "that the evidence as to each individual offense would not be mutually admissible at separate trials" to warrant severance. *McKnight*, 280 Md. at 612, 375 A.2d at 556. Only after taking into consideration these tenets, a trial court must balance the prejudice caused by joinder with "considerations of economy and efficiency in judicial administration." *Frazier*, 318 Md. at 607, 569 A.2d at 689; *McKnight*, 280 Md. at 608, 375 A.2d at 554.

trial court's lack of authority to bifurcate possession of a regulated firearm by a prohibited person counts in a hybrid trial procedure—involving two factfinders.

We next turn to the potential procedural problems generated by the bifurcated hybrid procedure. The procedure would require an impermissible "partial waiver" of a defendant's right to a jury trial that would complicate a trial judge's determination as to whether a defendant has been sufficiently advised of and properly waived his or her right to a jury trial. Second, in certain situations, the hybrid bifurcated trial procedure may generate the potentiality of inconsistent verdicts between judge and jury as recognized by this Court in *Galloway*.

Rule 4-246 sets forth the procedure through which a defendant may waive his or her right to a jury trial. The rule provides that,

> (a) Generally. In the circuit court, a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule. The State does not have the right to elect a trial by jury.

> (b) Procedure for Acceptance of Waiver. A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that the waiver is made knowingly and voluntarily.

Md. Rule 4-246. The Rule does not specifically empower a defendant to elect a jury trial with respect to some counts of a charging document and waive it with respect to other counts. *See Galloway*, 371 Md. at 398–99, 809 A.2d at 665. Further, "[w]e have generally considered the waiver of the right to be tried by a jury to be a waiver in respect to the entire merits trial, not portions of the trial." *Id.* (citing *Martinez v. State*, 309 Md. 124, 131, 622

- 38 -

A.2d 950, 953 (1987)). We have treated a defendant's waiver of the right to a jury trial to be "an either/or selection." *Id.* As noted by the *Galloway* Majority, this Court has previously held that, in the context of a not criminally responsible plea, a defendant's waiver of his or her right to a jury trial on the defendant's guilt or innocence "inevitably encompasses a waiver of jury rights as to criminal responsibility." *State v. Marsh*, 337 Md. 528, 539, 654 A.2d 1318, 1323 (1995); *Galloway*, 371 Md. at 399, 809 A.2d at 665–66.[17]

The Committee Note to Rule 4-246 supports this conclusion in its language that "the court should seek to ensure that the defendant understands that: . . . unless the defendant waives a trial by jury, *the case* will be tried by a jury." (Emphasis added). The singular description contained within the Committee Note supports our prior interpretation of Rule 4-246—an interpretation under which a defendant is not entitled to waive his right to jury trial only with reference to specific charges. As noted by the State, our principal inquiry in assessing a defendant's waiver of his or her constitutional right to trial by jury was whether the waiver was "knowing and voluntary[.]" *Abeokuto v. State*, 391 Md. 289, 316, 893 A.2d 1018, 1034 (2006) (citing *Smith v. State*, 375 Md. 365, 377–80, 825 A.2d 1055, 1063 (2003)). The bifurcated hybrid trial procedure urged by Mr. Hemming would complicate a trial judge's assessment of whether a defendant's jury trial waiver is knowing and voluntary. Specifically, the procedure would complicate this process as it involves

---

[17] Nonetheless, in situations where a defendant enters pleas of guilty and NCR, the defendant may have the NCR portion of the trial determined by a jury—assuming he or she does not waive his or her right to a jury trial. *See* Md. Rule 4-314(a)(4).

two factfinders considering different counts. We find this additional level of complication untenable.

Furthermore, the bifurcated trial procedure, suggested by Mr. Hemming, generates the issue of potentially inconsistent verdicts between the judge and jury. In *Galloway*, the Majority noted that although "convictions based on inconsistent jury verdicts are tolerated[,]" this principle does not hold in situations where "a judge is involved in rendering one of the inconsistent verdicts." 371 Md. at 401, 415, 809 A.2d at 667, 675 (citing *Williams v. State*, 117 Md. App. 55, 70–71, 699 A.2d 473, 481 (1997)). Accordingly, the Court fashioned a rule under which any inconsistency in a combined verdict of a jury and trial judge is impermissible. *Id.* at 416, 809 A.2d at 676.[18]

As noted *supra* at n.18, unlike *Galloway*, *Price* and its progeny focused on inconsistent jury verdicts and did not consider inconsistent verdicts rendered between judge and jury. As explained by the *Galloway* Court, "[i]f this Court were to approve the inconsistent verdicts rendered by the trial judge, it would be authorizing a practice that would permit the State to achieve a judgment of conviction that overrides a jury's finding

---

[18] At the time of *Galloway,* inconsistent verdicts between judge and jury were impermissible, but inconsistent jury verdicts were "tolerated[.]" 371 Md. at 401, 809 A.2d at 667. Our jurisprudence concerning inconsistent jury verdicts has evolved over time. *Price v. State*, 405 Md. 10, 29, 949 A.2d 619, 630 (2008) (holding that inconsistent jury verdicts are categorically impermissible). In *McNeil v. State*, we limited the *per se* rule of *Price*. 426 Md. 455, 459, 44 A.3d 982, 984 (2012) (distinguishing between a legally and a factually inconsistent verdict, and holding the latter is permissible in criminal trials). More recently, in *State v. Stewart*, we rejected this distinction. 464 Md. 296, 304, 305, 211 A.3d 371, 376 (2019) (holding that the permissibility of an inconsistent jury verdict depends on "whether the jury verdict on its face indicates that the jury failed to follow the trial court's proper instructions on the law governing the charged offenses").

- 40 -

of acquittal." *Galloway*, 371 Md. at 416, 809 A.2d at 675. As demonstrated by the *Galloway* Court, the procedure has the potentiality to elevate one trier of fact's verdict over the other—a potentiality that ultimately could undermine confidence in the criminal justice system. *See id.* at 406, 809 A.2d at 670 (noting that "such matters would undermine the historic role of the jury as the arbiter of questions put to it") (quoting *Hoffert v. State*, 319 Md. 377, 384–85, 572 A.2d 536, 540 (1990)). Therefore, despite the evolution of our jurisprudence on the permissibility of inconsistent jury verdicts, the *Galloway* Court's holding that inconsistent verdicts between judge and jury are impermissible remains good law and further supports our holding in the instant appeal—as a potential procedural pitfall unique to the bifurcated hybrid trial procedure.

In addition to the several federal decisions, Mr. Hemming cites to various distinguishable decisions from other states involving the bifurcation of possession of a regulated firearm by a prohibited person counts under the hybrid trial procedure. The only decision Mr. Hemming relies upon which directly contemplates the bifurcated hybrid trial procedure is one by the Supreme Court of Connecticut.[19] *State v. Knight*, 266 Conn. 658, 661–62, 835 A.2d 47, 50 (2003). In that case, the court considered "a procedurally unique

---

[19] Mr. Hemming also cites to decisions by appellate courts from other states. However, these cases fall into either one of two categories. First, some of these cases considered bifurcation of counts where all counts were decided by a jury. *See State v. Foust*, 482 S.W.3d 20, 47 (Tenn. Crim. App. 2015); *Lawson v. State*, 264 P.3d 590, 599 (Alaska Ct. App. 2011); *Morales v. State*, 143 P.3d 463, 465 (Nev. 2006); *Chapple v. State*, 866 P.2d 1213, 1217 (Okla. Crim. App. 1993); *Hendrickson v. State*, 871 S.W.2d 362, 365–66 (Ark. 1994). Second, the remaining case cited by Mr. Hemming did not identify whether the bifurcated counts would be heard by the same factfinder. *Hines v. State*, 801 N.E.2d 634, 635 (Ind. 2004).

criminal trial, wherein two counts of the criminal information were decided by the jury and a third count was decided separately by the court." *Id.* at 660, 835 A.2d at 49. The defendant was charged with murder, carrying a pistol or revolver without a permit, and possession of a regulated firearm by a prohibited person; the latter charge being decided by the trial court. *Id.* at 658, 835 A.2d at 47. The jury found the defendant not guilty of carrying a pistol or revolver without a permit, but the trial judge found him guilty on the possession of a regulated firearm by a prohibited person count. *Id.* The defendant entered into a stipulation that he did not maintain a permit to carry a pistol or revolver, so, in reference to the firearm offenses, the judge and jury were both tasked only with determining whether the defendant possessed the firearm. *Id.* at 662 n.8, 835 A.2d at 51 n.8.

On appeal, the defendant argued, among other things, that the trial court's verdict was impermissibly logically inconsistent with that of the jury, and therefore, reversal was required. *Id.* at 670, 835 A.2d at 55. The Supreme Court of Connecticut considered our holding in *Galloway*, that inconsistent verdicts between jury and judge are impermissible, and rejected the proposition. *Id.* at 673–74, 835 A.2d at 56–57. Undoubtedly, *Knight* demonstrates that the potentiality of inconsistent verdicts, under the bifurcated hybrid trial procedure, is a substantial issue. For this reason, under our prohibition against inconsistent verdicts between jury and judge enunciated in *Galloway*, we recognize that a *Carter* stipulation is a more appropriate methodology of ameliorating a defendant from undue prejudice that avoids the potential pitfalls associated with the bifurcated hybrid trial procedure.

- 42 -

A *Carter* stipulation is one method through which a defendant may limit the potential prejudice stemming from the introduction of evidence establishing the defendant's legal status. The bifurcated hybrid trial procedure Mr. Hemming urges us to adopt carries with it a host of procedural issues including, a defendant's "partial waiver" of his or her right to a jury trial and the potential for inconsistent verdicts. A *Carter* stipulation is preferable in terms of judicial economy and efficiency over the hybrid trial procedure. Furthermore, we find no Maryland or federal cases contemplating or endorsing the hybrid trial procedure. Although some federal cases have mentioned the bifurcation of possession of a regulated firearm by a prohibited person counts, none have contemplated the bifurcation of counts between two different factfinders in a single hybrid trial. Accordingly, Mr. Hemming's suggested hybrid bifurcated trial procedure lacks any surrounding jurisprudential support justifying its application. Therefore, we hold that a trial court does not maintain the discretion, under Rule 4-253(c), to bifurcate possession of a regulated firearm by a prohibited person counts, from other charges, in a singular trial split *between two different factfinders*.

Finally, we acknowledge, however, that Md. Rule 4-253(c), does permit a trial judge, in the interest of justice, to order a bifurcated proceeding in a criminal jury trial to limit or ameliorate the potential prejudice to the defendant who is tried on multiple counts which include charges of possession of a regulated firearm by a person previously convicted of a disqualified crime. Many courts have left it to the trial judge to exercise his or her discretion to weigh the potential prejudice to the defendant against the interests of judicial economy when deciding to bifurcate criminal proceedings. *See Foust*, 482 S.W.3d

at 47; *Lawson*, 264 P.3d at 599; *Williams*, 504 Fed. Appx. at 212; *McCode*, 317 Fed. Appx. at 212; *Morales*, 143 P.3d at 465; *Hines*, 801 N.E. at 635; *Nguyen*, 88 F.3d at 815; *Joshua*, 976 F.2d at 847; *Jones*, 16 F.3d at 492; *Hendrickson*, 871 S.W.2d at 365–66; *Chapple*, 866 P.2d at 1217. We note that the prejudice complained about must be more than the same potential for prejudice that every criminal defendant faces when multiple counts are tried together. *See Joshua*, 976 F.2d at 848.

A bifurcated trial procedure similar to the trial in *Joshua* is permitted under Md. Rule 4-253(c) where the trial judge, in the sound exercise of judicial discretion, determines that justice requires "other relief" because a party will be unfairly "prejudiced by joinder for trial of counts, charging documents or defendants." We offer some guidelines. For example, in those situations, the bifurcated counts will be decided by the same jury. Thus, the jury will first hear evidence and deliberate on the counts that do not relate to or require, as an element of the offense, proof of a defendant's prior disqualifying conviction. In the next phase of the trial, the jury will hear necessary evidence of the defendant's prior convictions consistent with our decision in *Carter*, 374 Md. at 722, 824 A.2d at 141, and deliberate on charges such as possession of a regulated firearm by one with a prior felony conviction, possession of a regulated firearm by one with a disqualifying conviction; possession of ammunition by a prohibited person; and similar charges. In the context of bifurcated proceedings, generally, all of the charges against the defendant will arise out of the same, uninterrupted series of transactions. As such, the bifurcated trial will be a highly efficient way to try the case within the trial judge's discretion. Henceforth, a trial of those

offenses to which a defendant's legal status or prior conviction is irrelevant are insulated from the jury's deliberations on the criminal-in-possession counts.

A *Joshua*-style bifurcated proceeding, like the *Carter* stipulation, can be an effective procedure to limit or ameliorate the potential prejudice in a trial involving possession of a regulated firearm by a prohibited person counts that are included within a multicount charging document. Like the *Carter* stipulation and the limiting jury instruction, bifurcation is a tool available to the trial judge to limit or ameliorate potential prejudice. A *Joshua*-style bifurcation proceeding does not present the problems created by a hybrid jury/judge trial—partial waiver of the right to a jury, inconsistent verdicts between judge and jury, and a trial court's verdict topping that of the jury. Further, *Joshua*-style bifurcation prevents the jury from hearing evidence of a defendant's prior convictions while the jury is deliberating on the counts that are unrelated to that defendant's prior involvement with the criminal justice system. *See Joshua*, 976 F.2d at 848. The procedure's ameliorative effect is apparent and substantial.

Notably, in the *Joshua* case, the defendant had the benefit of both a bifurcated proceeding and a stipulation to ameliorate the unfair prejudice resulting from the defendant's prior conviction. 976 F.2d at 846. We caution that a defendant seeking a bifurcated criminal trial with respect to multiple counts that include charges like a person prohibited to possess a firearm or ammunition because of his or her age, mental health, or criminal behavior must first comply with the Maryland Rules of Procedure. A motion, timely filed in advance of trial, is necessary to allow the trial judge sufficient time to look forward in planning the course of the anticipated trial. Accordingly, the motion to bifurcate

should be in writing and filed within the 30-day mandatory motion period prescribed by Rule 4-252(a)(5) for motions to sever.

Mr. Hemming's second question presented in the appeal *sub judice* is whether the trial judge abused its discretion in denying his motion to bifurcate. As we have determined that a trial judge does not maintain the discretion under Rule 4-253(c) to bifurcate possession of a regulated firearm by a prohibited person counts from other charges in a hybrid trial procedure, we hold that the trial court correctly determined that it did not have the authority for such a bifurcation. The trial judge's ruling on the motion was reasonable. Moreover, Mr. Hemming did not request a *Joshua*-style bifurcation proceeding. Accordingly, the circuit court did not abuse its discretion in denying Mr. Hemming's motion. Therefore, for the foregoing reasons, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/48a19cn.pdf